## HAMBURGER v HENRY FORD HOSPITAL

Docket No. 78-3138. Submitted May 14, 1979, at Detroit.—Decided August 6, 1979. Leave to appeal applied for.

Albert C. Hamburger, M.D., entered Henry Ford Hospital having symptoms consistent with a mild stroke. During an x-ray procedure he collapsed, became unconscious and started urinating. Rita McKinney, a student trainee and functioning as the x-ray technician, called for help and four other hospital employees arrived. Ms. McKinney and the four employees lifted Dr. Hamburger onto a stretcher. They failed to support his head and it struck a metal guard rail. Dr. Hamburger and his wife, Ruth Hamburger, brought an action in Wayne Circuit Court alleging that the blow on the head caused neurological deterioration. Defendant claims the blow was not the cause. Verdicts of $192,500 for Dr. Hamburger and $7,500 for his wife were returned by the jury. Judgment on the verdicts was entered, Thomas J. Foley, J. Defendant appeals raising two issues: (1) whether the trial court should have granted defendant's motion for a new trial based on its trial objection to the misconduct of a plaintiff and of plaintiffs' counsel who allegedly made verbal and facial responses while defense witnesses were on the witness stand, and (2) whether defendant was entitled to an instruction on gross negligence based on the good samaritan statute. *Held:*

1. The grant or denial of a new trial is within the sound discretion of the trial court. The trial judge was in a position to see the facial responses and verbal conduct and assess their impact on the jury and there is nothing in the record which would indicate an abuse of discretion.

2. The good samaritan statute excuses only physicians,

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur 2d, New Trial §§ 212, 213.

[2] 57 Am Jur 2d, Negligence §§ 33 *et seq.*, 74.
61 Am Jur 2d, Physicians and Surgeons § 160.

[3, 4] 40 Am Jur 2d, Hospitals § 14 *et seq.*

[5] 40 Am Jur 2d, Hospitals §§ 14, 24, 28.
Hospital's liability for negligence in selection or appointment of staff physician or surgeon. 51 ALR3d 981.

nurses and specified hospital personnel from civil liability where volunteer assistance is performed in an emergency situation, without gross negligence or wilful and wanton misconduct. A hospital, due to the high standard of care it is required to provide patients, may be held liable for ordinary negligence in the treatment of a patient by employees where a hospital-patient relationship exists at the time of a negligent act. A hospital in Michigan is unable to claim derivative immunity from the acts of its employees. Henry Ford Hospital, whether Ms. McKinney and the four employees who assisted her are liable or not, is not entitled to immunity for ordinary negligence because a hospital-patient relationship existed between the hospital and Dr. Hamburger at the time of the allegedly negligent acts of the hospital employees. The trial judge properly refused to give defendant's requested instruction on gross negligence concerning the actions of Ms. McKinney and the other hospital employees. Ordinary negligence, not gross negligence, was sufficient to establish hospital liability.

Affirmed.

1. TRIAL — MOTIONS — NEW TRIAL — DISCRETION — ABUSE OF DISCRETION — APPEAL AND ERROR.

Denial of a motion for a new trial is within the sound discretion of the trial judge and his decision will not be reversed on appeal unless there is an abuse of that discretion.

2. NEGLIGENCE — MALPRACTICE — GOOD SAMARITAN STATUTE — HOSPITALS — EMERGENCY CARE — PHYSICIANS — NURSES — HOSPITAL PERSONNEL — GROSS NEGLIGENCE — WILFUL MISCONDUCT — STATUTES.

The good samaritan statute provides that a physician or registered nurse who in good faith renders emergency care at the scene of an emergency, where no doctor-patient or nurse-patient relationship existed prior to such emergency, is not liable for civil damages for acts or omissions in rendering emergency care, except acts or omissions amounting to gross negligence or wilful and wanton misconduct; a second section of the statute provides that certain specified hospital personnel shall not be liable for civil damages for acts or omissions in rendering emergency care except acts or omissions amounting to gross negligence or wilful and wanton misconduct (MCL 691.1501, 691.1502; MSA 14.563, 14.563[12]).

3. HOSPITALS — EMERGENCY FACILITIES — RESPONSIBILITY — STATUTES.

A hospital has the responsibility of reasonably and adequately

staffing hospital emergency facilities where the hospital maintains or holds out to the general public that it maintains such emergency room facilities (MCL 691.1502; MSA 14.563[12]).

4. HOSPITALS — STANDARD OF CARE — NEGLIGENCE — BREACH OF DUTY — HOSPITAL-PATIENT RELATIONSHIP — CIVIL LIABILITY.

Hospitals have certain standards of care, similar to those of physicians and nurses, that they are required to provide to patients; these standards may be breached through ordinary negligence in the treatment of a patient; therefore, hospitals are not protected from civil liability where a hospital-patient relationship exists at the time of an injury to a patient through a negligent act of the hospital or one of its employees.

5. HOSPITALS — EMPLOYEES — MASTER AND SERVANT — RESPONDEAT SUPERIOR — DERIVATIVE LIABILITY — NEGLIGENCE — DERIVATIVE IMMUNITY — EMPLOYEE IMMUNITY.

Hospitals have derivative liability for the negligence of their employees where the employees are dealing with patients within the scope of their authority; a hospital has no derivative immunity and is responsible for the negligent acts of its employees even though the employees may be immune from liability.

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Michael Gagleard),* for plaintiff.

*Kitch & Suhrheinrich, P.C.* (by *Anthony G. Arnone),* for defendant.

Before: N. J. KAUFMAN, P.J., and ALLEN and K. B. GLASER, JR.,* JJ.

K. B. GLASER, JR., J. Plaintiff Albert D. Hamburger, M.D., entered Henry Ford Hospital as a patient on December 31, 1975, having symptoms consistent with a mild stroke. He was sent to an x-ray room attended by Ms. Rita McKinney who was a student trainee and functioning as an x-ray technician but was not certified. The patient was placed on a stool with a low back during the x-ray

* Circuit judge, sitting on the Court of Appeals by assignment.

procedure. Immediately after the procedure was completed the patient collapsed while still on the stool, became unconscious and started urinating. Ms. McKinney put a tongue depressor in his mouth and called to a passing fellow employee to call the "blue alert" team. This team consists of hospital personnel especially trained to respond to life-threatening emergencies. Before the blue alert team arrived, other hospital employees responded to her call for help. Five of them, including Ms. McKinney, lifted the patient onto a stretcher. The names and specific hospital functions of the other four hospital employees are not known. They failed to support the patient's head and it struck a metal guard rail, apparently resulting in the patient regaining consciousness. When the blue alert team arrived they did nothing further but send the patient back to his room. Plaintiffs claim the blow on the head caused the neurological deterioration thereafter experienced by Dr. Hamburger. Defendant claims the blow was not a cause of that deterioration. The jury returned a verdict of $192,-500 in favor of Dr. Hamburger and $7,500 for his wife Ruth Hamburger.

During the course of the trial, while defense witnesses were on the witness stand, a plaintiff and the attorney for the plaintiffs made verbal and facial responses to which defendant objected and moved for a mistrial. The court denied the motion. Defendant raised the issue again in a motion for new trial which the court again denied, on the ground that the conduct had no influence on the outcome of the trial.

Defendant also requested an instruction that unless the actions of Ms. McKinney and the other hospital employees in placing the patient on the stretcher was gross negligence plaintiffs could not

recover. Defendant based its request on the "good samaritan" statute, MCL 691.1502; MSA 14.563(12). The trial judge denied the request.

Defendant hospital appeals by right pursuant to GCR 1963, 806.1 raising two issues.

1) Whether the trial court should have granted a new trial based on the misconduct of a plaintiff and the plaintiffs' counsel.

2) Whether defendant was entitled to the requested instruction on gross negligence.

## I

### *Misconduct of plaintiffs and counsel*

Denial of a motion for new trial is within the sound discretion of the trial judge and will only be reversed on appeal where there is an abuse of discretion. *Willett v Ford Motor Co* 400 Mich 65, 70-71; 253 NW2d 111 (1977). The trial court was in a position to see the facial responses and verbal conduct and assess their impact on the jury. There is nothing in the record from which we could conclude there was an abuse of discretion. The trial court's decision on the motion must be affirmed.

## II

### *Defendant hospital's requested instruction on the good samaritan statute*

The common-law doctrine with respect to persons, especially doctors, rendering voluntary aid in an emergency may have made many doctors reluctant to render voluntary emergency care for fear of malpractice suits. Many states with the public welfare in mind have enacted "good samaritan"

statutes to encourage prompt treatment of accident victims by excusing from civil liability those who render care in an emergency. Some states have extended this protection to nurses and some even to anyone assisting in an emergency. See Anno: *Construction of "Good Samaritan" statute excusing from civil liability one rendering care in emergency,* 39 ALR3d 222.

Michigan originally enacted such a statute providing immunity for physicians for ordinary negligence at the scene of an emergency. By 1964 PA 60; MCL 691.1501; MSA 14.563, this immunity was extended to registered nurses.

That is now § 1 and reads as follows:

"Sec. 1. A physician or registered nurse who in good faith renders emergency care at the scene of an emergency, where a physician-patient or registered nurse-patient relationship did not exist prior to the advent of such emergency, shall not be liable for any civil damages as a result of acts or omissions by the physician or registered nurse in rendering the emergency care, except acts or omissions amounting to gross negligence or wilful and wanton misconduct."

We particularly emphasize that the statute excepted cases where a professional relationship had already been established with the patient.

1975 PA 123; MCL 691.1502; MSA 14.563(12) became effective on July 1, 1975, extending such protection to certain named persons in hospital settings *who were under no duty to respond.* It is this addition under which defendant claims that Ms. McKinney and the other four hospital employees who lifted Dr. Hamburger onto the stretcher were immune from liability for ordinary negligence. Defendant further claims that because they were immune the hospital is also immune.

The 1975 addition to the statute (§ 2) reads as follows:

"Sec. 2. (1) In instances where the actual hospital duty of that person did not require a response to that emergency situation, a physician, dentist, podiatrist, intern, resident, registered nurse, licensed practical nurse, registered physical therapist, clinical laboratory technologist, inhalation therapist, certified registered nurse anesthetis, x-ray technician, or paramedical person, who in good faith responds to a life threatening emergency or responds to a request for emergency assistance in a life threatening emergency within a hospital or other licensed medical care facility, shall not be liable for any civil damages as a result of an act or omission in the rendering of emergency care, except an act or omission amounting to gross negligence or wilful and wanton misconduct. (2) The exemption from liability under subsection (1) shall not apply to a physician where a physician-patient relationship existed prior to the advent of the emergency nor to a licensed nurse where a nurse-patient relationship existed prior to the advent of the emergency. (3) Nothing in this act shall diminish a hospital's responsibility to reasonably and adequately staff hospital emergency facilities when the hospital maintains or holds out to the general public that it maintains such emergency room facilities." MCL 691.1502; MSA 14.563(12).

There is no case law in Michigan and very little elsewhere construing good samaritan statutes. 39 ALR3d 222, *supra.* This issue is one of first impression.

The Court must resolve the issue by construing the statute to determine the intent of the Legislature as to who is entitled to its protection. *Flint Board of Education v Williams,* 88 Mich App 8, 15; 276 NW2d 499 (1979).

At the outset we are aware that there is a dispute as to whether Ms. McKinney was an x-ray

technician, within the meaning of the statute, and whether she had a duty to respond within the meaning of the statute. There is even greater doubt as to whether there was any evidence from which the jury could find that the other four employees who lifted Dr. Hamburger were within the protection of the statute, an issue on which we believe, and defendant admits, that defendant has the burden of proof. However, these are questions of fact, and are not necessary to a resolution of the issue. We therefore assume, for purposes of this opinion, that all five employees were entitled to the immunity of the statute at the time Dr. Hamburger was lifted and struck his head.

First it is of great significance that there was a hospital-patient relationship between defendant Henry Ford Hospital and Dr. Hamburger at the time of the injury. We note that in enacting the first section of the statute (MCL 691.1501; MSA 14.563) the Legislature carefully excepted situations where a physician-patient, or registered nurse-patient, relationship existed. This philosophy was in fact carried over into the second section of the 1975 act. Also the original statute is *in pari materia* to the 1975 enactment and therefore we must assume the Legislature's impressions derived from it influenced its understanding of the 1975 addition. The Court, in construing that addition (MCL 691.1502; MSA 14.563[12]) should therefore also allow its understanding of it to be influenced by impressions derived from the first section of the statute. *Flint Board of Education v Williams, supra.* Hospitals have certain standards of care, similar to those of physicians and nurses, that they must meet with their patients. Ordinary negligence in treatment of the patient is a breach of that standard. *Bivens v Detroit Osteopathic*

*Hospital,* 77 Mich App 487, 478; 258 NW2d 527 (1977).

It is unreasonable to conclude, in the absence of express language, given: (1) the clear thrust of § 1 to *volunteers* only where no professional relationship was established, and (2) the exception of persons having a physician-patient relationship or having a duty to respond, in the 1975 addition, and (3) the history of good samaritan legislation applying to volunteers only, that the Legislature intended to protect hospitals in situations where a hospital-patient relationship existed at the time of the negligent act.

It is of course significant that no mention of a hospital's right to the protection was stated in the statute. It would have been easy to do so if the Legislature so intended.

Section 3 of the statute apparently confused the issue in the trial court. It is reasonable to assume that § 3 was included because people who are brought to an emergency room are not yet protected by a hospital-patient relationship. Therefore a hospital perhaps could, by the simple expedient of not assigning staff to the emergency room, make everyone who responds to an emergency there a volunteer for purposes of this statute. There is, of course, no question of the hospital's duty to adequately staff the hospital to care for its patients. Non-emergency admissions have careful, even exhaustive, admissions procedures, clearly establishing the hospital-patient relationship before the patient enters the hospital. Section 3 makes it clear that this statute does not change that duty where there is an emergency room regardless of the hospital-patient relationship. We find no indication that the statute is to be applied to emergency rooms any differently than in the other hospital departments.

Lastly, we address the question as to whether the Legislature might have intended the hospital to have *derivative immunity* for negligent acts of its employees through the doctrine of *respondeat superior.*

In Michigan, hospitals clearly have derivative *liability* for negligence of their employees in dealing with their patients within the scope of their authority and sometimes even for non-employees. *Grewe v Mt Clemens General Hospital* 404 Mich 240, 252; 273 NW2d 429 (1978). Again, there is no caselaw in Michigan and very little elsewhere as to a master's derivative immunity for acts of his servant. What there is, however, uniformly holds that there is no such derivative immunity. See *Steward v Borough of Magnolia* 134 NJ Super 312; 340 A2d 678 (1975). See also Seavey, Law of Agency, § 93, p 167, Prosser, Torts (4th ed), § 123, p 869. Harper & James, The Law of Torts, § 8.10, p 643, *Schubert v August Schubert Wagon Co,* 249 NY 253, 256; 164 NE 42; 64 ALR 293 (1928). We therefore hold there is no derivative immunity of the master from the servant in the absence of a statute to the contrary.

We conclude that defendant hospital was not entitled to immunity for ordinary negligence under 1975 PA 123 regardless of the immunity of any of its allegedly negligent employees, because a hospital-patient relationship existed between defendant hospital and plaintiff at the time of the allegedly negligent act. The trial judge therefore properly refused the defendant's requested instruction.

Affirmed. Costs to plaintiff.