MATTS v HOMSI

Docket No. 47792. Submitted April 8, 1981, at Grand Rapids.—Decided May 20, 1981. Leave to appeal applied for.

Betty J. Matts, as administratrix of the estate of Ronald E. Matts, deceased, brought an action against R. K. Homsi, M.D., P.C., and R. K. Homsi, M.D., individually, for medical malpractice in the negligent treatment of Ronald E. Matts. Following the presentation of plaintiff's proofs, defendant moved for a directed verdict, which motion was granted, Cheboygan Circuit Court, Richard G. Boyce, J. Plaintiff appeals, alleging that the trial court erred in affording defendant statutory immunity for emergency care. *Held:*

1. The record reveals that defendant had actual hospital duties which did not include responding to emergency situations and that defendant responded to an emergency call for assistance. As such defendant was entitled to the partial immunity afforded by the statute.

2. The record reveals that no physician-patient relationship existed prior to the emergency and that a life threatening emergency existed at least until surgery was completed.

Affirmed.

1. TRIAL — DIRECTED VERDICTS.

A trial court in determining whether to grant a motion for a directed verdict should view the evidence presented in the light most favorable to the nonmoving party, and if the evidence so viewed establishes a prima facie case a directed verdict is improper.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 496–500.

Power of court sitting as trier of fact to dismiss at close of plaintiff's evidence, notwithstanding plaintiff has made out a prima facie case. 55 ALR3d 272.

[2] 61 Am Jur 2d (Rev), Physicians, Surgeons and Other Healers § 306.

Construction of "Good Samaritan" statute excusing from civil liability one rendering care in emergency. 39 ALR3d 222.

2. Physicians and Surgeons — Hospital Personnel — Emergency
   Medical Care — Statutes.

> A physician whose actual hospital duties do not require a re-
> sponse to an emergency situation and who, in good faith,
> responds to a life threatening emergency or to a request for
> assistance in such a situation within a licensed medical care
> facility shall not be held liable for civil damages arising out of
> an act or omission in the rendering of the care except where
> the act or omission amounts to gross negligence or wilful or
> wanton misconduct, but such exemption from liability does not
> apply where a physician-patient relationship exists prior to the
> advent of the emergency or where the actual function within
> the medical care facility of the person who renders emergency
> care is to respond to emergency situations (MCL 691.1502; MSA
> 14.563[12]).

*Edward B. Emery,* and *Bell & Hertler, P.C.,* for
plaintiff.

*Carpenter, Fenner, Barney & Hofmann,* for de-
fendant.

Before: MacKenzie, P.J., and V. J. Brennan
and M. F. Cavanagh, JJ.

Per Curiam. Plaintiff, Betty J. Matts, adminis-
tratrix of the estate of her deceased son, Ronald
Matts, filed a medical malpractice complaint
against R. K. Homsi, M.D., P.C., and R. K. Homsi,
M.D., individually (hereinafter collectively referred
to as defendant). The essential allegation of plain-
tiff's complaint was that defendant was guilty of
negligently treating plaintiff's son following his
involvement in an automobile accident on October
11, 1975. Plaintiff named several other defendants,
but they were dismissed prior to trial. Following
plaintiff's proofs, the trial court granted defen-
dant's directed verdict motion. Plaintiff appeals.

The standard of review employed to determine
whether a trial court has erred in entering a

directed verdict is to view the evidence in the light most favorable to the nonmoving party. If the evidence, when so viewed, establishes a prima facie case, a directed verdict is improper. *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975), *Wynn v Cole,* 91 Mich App 517; 284 NW2d 144 (1979), *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980). *Siliski v Midland-Ross Corp,* 97 Mich App 470; 296 NW2d 576 (1980). In slightly different terms, it has been said that a trial court should deny a motion for directed verdict when the facts are such that reasonable persons could honestly reach different conclusions. *Tiffany v The Christman Co,* 93 Mich App 267; 287 NW2d 199 (1979).

Defendant's directed verdict motion was based upon the partial immunity afforded by MCL 691.1502; MSA 14.563(12). The pertinent language of the statute is as follows:

"(1) In instances where the *actual hospital duty* of that person did not require a response to that emergency situation, a physician * * * who in good faith responds to a life threatening emergency or responds to a request for emergency assistance in a *life threatening emergency* within a hospital or other licensed medical care facility, shall not be liable for any civil damages as a result of an act or omission in the rendering of emergency care, except an act or omission amounting to gross negligence or wilful and wanton misconduct." (Emphasis supplied.)

The immunity afforded by the above section can be removed by subsection (2) of the statute in certain circumstances:

"(2) The exemption from liability under subsection (1) shall not apply to a physician where a *physician-patient relationship* existed prior to the advent of the emergency * * *." (Emphasis supplied.)

It is clear that a careful review of the factual circumstances in each case is necessary to determine whether a health care provider should be afforded the partial immunity found in the above statute. In the case at bar, the facts indicated that defendant was called to the emergency room of Community Memorial Hospital after being informed by the physician on duty that a young man had been brought in with internal abdominal bleeding. The emergency room operated by the hospital was manned on a temporary basis by the staff physicians at the hospital. Defendant was a staff physician but was not "on call" on the night in question and had no direct responsibility to respond to the request for assistance if he did not want to. The staff physician manning the emergency room was an internist and called defendant when he realized that plaintiff's decedent was in need of abdominal surgery.

When defendant arrived at the emergency room, he found the decedent in severe shock and bleeding profusely. After determining that the decedent needed surgery, defendant received the family's permission to perform the surgery and admitted the decedent to the hospital. Following several hours of surgery, the decedent's condition started to improve, and he was taken to the intensive care unit. On the following day, his condition started to deteriorate, and he experienced renal failure and lung congestion. The decedent was transferred to another hospital where further surgery was performed. This surgery disclosed that there were several unrepaired tears to decedent's mesentery tissues and that there were several unrepaired holes in his small intestine. The subsequent surgery (not performed by defendant) and postoperative care was unsuccessful in saving decedent's life.

Following the submission of plaintiff's proofs, defendant moved for a directed verdict contending that defendant was entitled to the partial immunity provided by MCL 691.1502; MSA 14.563(12). In arguing against defendant's motion before the court, plaintiff conceded that there had been no showing that defendant acted in a grossly negligent way, intended to cause the deceased's death, or acted in utter disregard for the consequences of his conduct.

On appeal, plaintiff contends that defendant was not entitled to partial immunity since: (1) he did not have any duty whatsoever to respond and attend deceased, (2) he had a doctor-patient relationship with the deceased prior to the advent of the emergency, and (3) he did not respond to a "life threatening emergency". On the facts of this case, we disagree.

Plaintiff's first argument is that defendant was not within the protection of the statute since he had absolutely no "actual hospital duty" to come to the hospital and treat the deceased. This contention is not supported by the facts of this case. Plaintiff interprets the statute to indicate that a physician who has absolutely no responsibility to respond to an emergency is not accorded partial immunity since the statute was only meant to apply to hospital personnel who had *some* hospital responsibility. Since defendant had *no* responsibility, plaintiff contends that he should not be afforded immunity for his allegedly negligent acts.

The testimony adduced by plaintiff indicated that defendant clearly had certain hospital responsibilities. He was on the staff at the hospital and specifically agreed in the case at bar to respond to an emergency call for assistance.

Furthermore, a comparison between MCL

691.1501; MSA 14.563 and MCL 691.1502; MSA 14.563(12) indicates that the latter statute was intended to afford partial immunity in instances where the situs of the emergency was actually within a hospital or other medical care facility. Plaintiff's interpretation of the act would mean that partial immunity is afforded only to a health care provider who has some nonspecific connection with the health care facility, but whose duty did not require him to respond to the particular emergency. We do not read the statute so narrowly. The statute does not require that the person providing emergency care be in some way affiliated with the medical care facility where the care is being rendered. It only seeks to delineate the partial immunity afforded in terms to indicate that immunity does not exist for persons whose actual function is to respond to emergency situations.

Plaintiff also contends that defendant should not have been afforded partial immunity since there was a doctor-patient relationship established prior to the advent of the emergency. Plaintiff's contention is not supported on the facts of this case.

Defendant saw the deceased in the emergency room and subsequently admitted the deceased into the hospital as his patient. However, the emergency in the case at bar existed from the point in time when the deceased was involved in the automobile accident until surgery was completed. There is no dispute with the fact that the deceased was in very serious condition when brought into the hospital. Defendant's initial treatment of the deceased in the emergency room was all a part of his diagnosis and treatment. The deceased was brought to the hospital in critical condition, diagnosed as having severe abdominal injuries, pre-

pared for surgery and then operated upon. The facts clearly indicated a continuing emergency.

Lastly, plaintiff contends that there was no showing that a "life threatening emergency" existed. This contention also is not supported on the adduced facts. As previously mentioned, the facts were uncontested that the deceased's life was threatened from the point in time when he was brought into the emergency room until surgery was completed. Examination in the emergency room indicated that the deceased was suffering from severe internal injuries and hemorrhaging. His blood pressure was exceedingly low and he was in a state of shock. His near-death condition continued throughout the surgery performed by defendant. There was no discontinuation of the "life threatening emergency" until, at the earliest, surgery was completed.

Under the facts of this case, we conclude that the application of partial immunity pursuant to MCL 691.1502; MSA 14.563(12) was proper. Plaintiff's proofs failed to establish a prima facie case, and the trial court was correct in directing a verdict for defendant.

Affirmed. Defendant may tax costs.