*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACK CARL SMITH and JODY SMITH,

       Plaintiffs-Appellees,

v

ST. CLAIR ORTHOPAEDICS & SPORT
MEDICINE, PC and NICHOLAS J. SCHOCH, D.O.,

       Defendants-Appellants,

and

ASCENSION ST. JOHN HOSPITAL, doing
business as ST. JOHN HOSPITAL AND MEDICAL
CENTER, MICHAEL F. WIND, D.O., and
MICHAEL F. WIND, D.O., PC,

       Defendants.

UNPUBLISHED
October 20, 2022

No. 358592
Wayne Circuit Court
LC No. 19-012567-NH

Before: RICK, P.J., and O'BRIEN and PATEL, JJ.

PER CURIAM.

Michigan's Good Samaritan statute, MCL 691.1502, is not a complete liability shield for all medical providers. The statute affords partial immunity to a medical provider who does not have a duty to respond to an emergency situation but, "in good faith . . . responds to a request for emergency assistance in a life threatening emergency" for a nonpatient in a hospital or other licensed medical care facility. MCL 691.1502(1).

Although Dr. Nicholas Schoch did not have a duty to do so, he agreed to assist Dr. Michael Wind with a surgery on Jack Smith, who was Dr. Wind's patient. When Dr. Wind called Dr. Schoch in the morning, he made it clear that he did not plan to start the surgery until late afternoon. Dr. Schoch did not interrupt his busy surgical schedule or rush to the hospital. He performed a full day's work before stepping into the operating room six hours after Dr. Wind's call for

-1-

assistance. Based on the timeline of events, a reasonable juror could conclude that Dr. Schoch did not have a good-faith belief that there was a life-threatening emergency in progress at the time that he made the decision to respond to the call for assistance. Accordingly, we affirm the trial court's denial of Dr. Schoch and St. Clair Orthopaedics & Sports Medicine, PC's motion for summary disposition pursuant to MCR 2.116(C)(10).

## I. BACKGROUND

In March 2017, Dr. Wind performed a reverse shoulder arthroplasty on Smith's right shoulder at St. John Hospital. Smith's humerus was fractured during the surgery. Because the metal plate that Dr. Wind wanted to use to repair the fracture was not readily available, he closed the wound and planned to repair the fracture the following day.

The next morning, Dr. Wind asked one of the hospital's trauma surgeons to assist with the fracture repair. Dr. Wind testified that he wanted a trauma surgeon's assistance because "[t]hey fix broken bones" and he wanted to "[h]ave a couple of extra hands that are experienced in there to help" him. The trauma surgeon suggested that Dr. Wind contact Dr. Schoch, an orthopedic surgeon, because of his experience with shoulders and the humerus bone. Dr. Wind called Dr. Schoch at 10:10 a.m. to request his assistance. Dr. Schoch stated that he had a full day of surgeries scheduled at another facility and could not be at the hospital until 4:00 p.m. When Dr. Wind explained that he also had patients scheduled all day and did not intend to perform the surgery until much later in the day, Dr. Schoch agreed to assist. Dr. Wind testified that the plan was that he and Dr. Schoch would perform the repair together after Dr. Schoch was finished with his scheduled surgeries.

At approximately 2:30 p.m., Dr. Wind began exposing the fracture site so it would be ready when Dr. Schoch arrived. Dr. Wind intended to perform the repair with Dr. Schoch's guidance. But when Dr. Schoch arrived at 4:00 p.m., he took control of the surgery. After Dr. Schoch repaired the humerus, he determined that the base plate's position could be improved for ultimate results. Dr. Wind had only planned to repair the fracture. He had not planned to reposition the base plate. During Dr. Schoch's attempt to reposition the base plate, Smith suffered another fracture. Because of this fracture, the reverse shoulder replacement could not be completed. Dr. Schoch performed a hemiarthroplasty with bone grafts, with the intention that Smith could have the reverse shoulder replacement after the bone healed a few months later.

Smith and his wife filed a medical malpractice claim, alleging that a hemiarthroplasty was an improper treatment. Dr. Schoch and his employer, St. Clair Orthopaedics, pleaded reliance upon the Good Samaritan statutes, MCL 691.1501 and MCL 691.1502, as an affirmative defense. Following discovery, Dr. Schoch and St. Clair Orthopaedics moved for summary disposition pursuant to MCR 2.116(C)(10), contending that Dr. Schoch was entitled to immunity under the Good Samaritan statutes because he perceived the situation as an emergency. The trial court

denied the motion, concluding that there was a question of fact "whether Dr. Schoch had a good faith belief that an emergency situation existed at the time he responded."[1]

Dr. Schoch and St. Clair Orthopaedics now appeal by leave granted.[2]

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co,* 325 Mich App 108, 113; 923 NW2d 607 (2018). We consider all evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013). "The court is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

## III. ANALYSIS

Dr. Schoch and St. Clair Orthopaedics argue that the trial court erred in holding that there was a question of fact whether Dr. Schoch had a good faith belief that a life-threatening emergency existed at the time that he made the decision to respond to Dr. Wind's request for assistance. We disagree.

Dr. Schoch maintains that he is entitled to immunity under MCL 691.1502(1), which provides:

> If the individual's actual hospital duty does not require a response to the emergency situation, a physician . . . who in good faith . . . responds to a request for emergency

---

[1] The trial court also noted that "under MCL 691.1501(1) for immunity to apply, service must be rendered without compensation" and neither party had presented that Dr. Schoch had expected to be paid for his services when he agreed to assist Dr. Wind. Dr. Schoch and St. Clair Orthopaedics have not challenged the trial court's conclusion that there is a question of fact whether he is entitled to immunity under MCL 691.1501(1).

[2] *Smith v Ascension St. John Hosp*, unpublished order of the Court of Appeals, issued December 27, 2021 (Docket No. 358592).

assistance in a life threatening emergency in a hospital . . . is not liable for civil damages as a result of an act or omission in the rendering of emergency care . . . .[3]

Good Samaritan statutes are intended to "encourage prompt treatment of accident victims by excusing from civil liabilities those who render care in an emergency." *Hamburger v Henry Ford Hosp*, 91 Mich App 580, 584-585; 284 NW2d 155 (1979). Michigan's original Good Samaritan statute, MCL 691.1501, provided immunity for physicians at the scene of an emergency. *Id*. at 585. The enactment of MCL 691.1502 extended that protection to hospital settings for certain medical professionals who otherwise had no duty to respond. *Id*. This Court has explained that the purpose of MCL 691.1502 "is to encourage medical personnel to answer calls for assistance in perceived emergency situations involving nonpatients." *Pemberton v Dharmani*, 207 Mich App 522, 528; 525 NW2d 497 (1994) (*Pemberton II*). The immunity afforded by MCL 691.1502(1) is triggered by the doctor's good-faith belief that a life-threatening situation exists at the time that the decision to respond is made, as opposed to at the time that the treatment is actually rendered. *Id*.

In *Pemberton*, pelvic adhesions blocked a surgeon's view of a fallopian tube during a voluntary tubal ligation. *Id*. at 525. The surgeon requested the assistance of any available obstetric surgeon at the hospital, but none were available. *Id*. When the surgeon contacted an obstetrician whose office was nearby, that obstetrician abandoned the patient he was examining and immediately went to the hospital to assist in the operation. *Id*. It was undisputed that the patient was never in a life-threatening situation during surgery. *Id*. It was later discovered that the patient's colon, as opposed to her fallopian tube, had been transected. *Id*.

The patient and her husband brought a medical malpractice claim against the patient's doctor and the obstetrician who agreed to assist. *Id*. The assisting obstetrician contended that he was immune from liability for ordinary negligence under MCL 691.1502. *Id*. The trial court agreed with the assisting obstetrician, reasoning that MCL 691.1502 applied when a physician responded in good faith to a request for emergency assistance, even though a life-threatening situation did not actually exist. *Pemberton v Dharmani*, 188 Mich App 317, 319; 469 NW2d 74 (1991) (*Pemberton I*). This Court agreed with the trial court's statutory analysis, but found that summary disposition was improperly granted because there was a question of fact whether the assisting obstetrician had a good-faith belief that a life-threatening situation existed. *Id*. at 322.

On remand, the assisting obstetrician renewed his motion for summary disposition. His motion was supported by his affidavit asserting that he had a good-faith belief that there was a life-threatening emergency in progress when he received the request for immediate surgical assistance. *Pemberton II,* 207 Mich App at 526, 529. He contended that he did not discover that the situation was not life-threatening until after he had left his patient, went to the hospital, and prepared for surgery. *Id*. at 526-527. The plaintiffs argued that the surgeon should not be afforded immunity because, although he initially believed that the situation was life-threatening, he actually knew that

---

[3] This immunity does not apply if a professional relationship was already established with the patient before the emergency arose. MCL 691.1502(2). It is undisputed that Dr. Schoch did not have an existing physician-patient relationship with Smith when Dr. Wind requested his assistance.

it was not life-threatening when he rendered assistance. *Id*. at 527. The trial court concluded that MCL 691.1502's immunity is triggered by a physician's good-faith belief at the time that he or she responds to a request for emergency assistance rather than at the time of actual treatment. *Id*. at 528. This Court agreed:

> Because the statute was intended to encourage medical personnel to respond to emergency situations where they have no legal duty to do so, it follows that the immunity afforded by the statute is triggered by the doctor's decision to respond. This, in turn, means that the facts at hand when the decision to respond is made, and the doctor's good-faith assessment of those facts, should control when deciding the statute's applicability. [*Pemberton II*, 207 Mich App at 528.]

This Court recognized that "[t]he existence of good faith is normally a question of fact for the jury that should not be resolved by summary disposition unless the evidence is undisputed or conclusive." *Id*. at 528, n 1. Because the "[p]laintiffs did not counter the doctor's affidavit with contrary statements or any other documentation," this Court concluded that the trial court did not err in granting summary disposition in favor of the assisting doctor. *Id*. at 529.

In this case, it is undisputed that Dr. Wind requested Dr. Schoch's assistance at approximately 10:10 a.m. It is also undisputed that Dr. Schoch knew that the surgery would not begin until later in the afternoon. Dr. Wind testified that he was not in a panic when he requested Dr. Schoch's assistance. He simply wanted an extra pair of experienced hands to help him. And if he could not find a surgeon to assist him, he intended to complete the surgery himself.

Dr. Schoch initially testified at his deposition that the reason he agreed to assist Dr. Wind was because

> I had the patient's best interest at heart. I love orthopedics and if somebody is in trouble I'm going to do the best I can to help them and that's why I went down and helped . . . Mr. Smith.

He then testified that it was "emergent surgery because . . . when you're in the [operating room] and you're open and you have a fracture that you can't fix to me that's an emergent problem." He explained that an "emergent" orthopedic issue was one that "should be done within a short time frame" of 24 hours or less. He testified that his only goal in this emergent situation was to give Mr. Smith "the best possible functional shoulder . . . ." But he did not describe an emergent orthopedic issue as a life-threatening emergency. While he testified that there is an infection risk if a wound is open for a long period time during surgery, he also testified that "[i]nfections happen with any surgical procedure."

Dr. Schoch characterizes the fracture repair as an emergency situation because a long procedure with an open surgical wound presented an infection risk that could lead to sepsis and death. It is undisputed that Smith's wound was not open when Dr. Schoch made his decision to assist. And while Dr. Schoch claims it was his understanding that Dr. Wind was going to reopen the wound and begin the initial steps before Dr. Schoch arrived at the hospital, Dr. Wind testified that the initial plan was that he and Dr. Schoch "would do the case together" after they were both done with their other patients. Further, according to Dr. Schoch's testimony and affidavit, there is

a risk of infection with all surgeries, "[a]lmost any type of infection can lead to sepsis," and sepsis can "lead to tissue damage, organ failure and death" if not timely treated. Based on Dr. Schoch's reasoning, all surgeries are life-threatening emergencies because all surgeries have a risk of infection that could potentially lead to sepsis and death. The alleged "life-threatening emergency" is based on broad and general speculation of events that could occur in the future, as opposed to the facts that existed at the time that Dr. Schoch's decision was made.

MCL 691.1502's immunity is triggered by a physician's decision to respond a request for emergency assistance. *Pemberton II*, 207 Mich App at 528. Whether that decision was based on a good-faith belief that a life-threatening emergency was in progress is measured by the facts at the time the decision was made. *Id*. Unlike the assisting obstetrician in *Pemberton*, when Dr. Schoch received Dr. Wind's request for assistance, he did not abandon his patients and immediately go to the hospital. Instead, Dr. Schoch and Dr. Wind planned to perform the surgery later in the afternoon after both doctors were done with their other patients.[4]

Moreover, Dr. Schoch and St. Clair Orthopaedics have distorted the testimony of plaintiff's expert, Dr. Scott Desman. Dr. Desman testified that it would be reasonable to consider the situation an emergency if the patient had been open for up to two hours. But it is undisputed that Smith's wound was not open when Dr. Schoch spoke with Dr. Wind at 10:10 a.m. And Dr. Wind testified that the initial plan was that he and Dr. Schoch "would do the case together" after they were both done with their other patients. Further, Dr. Desman did not testify that it was reasonable for Dr. Schoch to consider the situation a life-threatening emergency when Dr. Schoch made his decision six hours before the surgery had started.

---

[4] This case is factually distinguishable from all of the Good Samaritan cases that defendants rely on. See *Gordin v William Beaumont Hosp*, 180 Mich App 488, 490; 447 NW2d 793 (1989) (an emergency room doctor summoned an off-duty surgeon to the hospital because a car accident victim required immediate surgery); *Higgins v Detroit Osteopathic Hosp Corp*, 154 Mich App 752, 761; 398 NW2d 520 (1986) (a pediatrician was called at home and informed that there had been a problem during the delivery of a newborn, the baby was not breathing, and the baby would die without immediate attention); *Matts v Homsi*, 106 Mich App 563, 566; 308 NW2d 284 (1981) (an internist working in the emergency room summoned an off duty staff physician to the hospital because a car accident victim had internal abdominal bleeding and required abdominal surgery).

Viewing the facts in the light most favorable to plaintiffs, a reasonable juror could conclude that Dr. Schoch did not have a good-faith belief that a life-threatening emergency was in progress at the time that he made the decision to respond to Dr. Wind's request for assistance six hours before the surgery began. Because Dr. Schoch's testimony is not undisputed or conclusive, his state of mind is a question of fact for the jury. *Pemberton II*, 207 Mich App at 529, n 1. Accordingly, we conclude that the trial court did not err in denying Dr. Schoch and St. Clair Orthopaedics' motion for summary disposition.[5]

Affirmed.

/s/ Michelle M. Rick
/s/ Colleen A. O'Brien
/s/ Sima G. Patel

---

[5] As an alternative basis for affirming the trial court's order, plaintiffs assert that a physician-patient relationship arose in the morning when Dr. Schoch agreed to assist Dr. Wind later in the day. It is unnecessary for us to reach this issue. Moreover, this issue was first raised by plaintiffs in their surresponse to Dr. Schoch's and St. Clair Orthopaedics' reply in support of the motion for summary disposition. It was not addressed by the trial court, and received only cursory treatment by plaintiffs on appeal. We conclude that this argument was not sufficiently preserved below, nor has it been sufficiently presented on appeal. Following the "raise or waive" rule, we consider the issue waived for purposes of this appeal. *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008).