## WYNN v COLE

Docket No. 77-4320. Submitted February 13, 1979, at Detroit.—Decided August 6, 1979.

Plaintiff Victoria Wynn, along with her husband, sued Verna Cole and others seeking damages for, among other things, malicious libel allegedly committed on a form sent out to one of Mrs. Wynn's former employers requesting an evaluation of certain of her qualities and abilities. Various parties and claims were subsequently dropped and, after one appeal to the Court of Appeals, the defamation claim against Verna Cole went to trial in the Genesee Circuit Court, Earl E. Borradaile, J. At the close of plaintiffs' proofs, the court ruled that the statements were protected by a qualified privilege, which could only be overcome by a showing of actual malice, and granted a directed verdict in favor of the defendant for failure to show malice. The only evidence of malice came from Mrs. Wynn and consisted of several incidents tending to show that defendant didn't like her. Plaintiffs, on appeal, concede that the statements are protected by a qualified privilege. *Held:*

Malice, in a defamation case, is established by proof that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. Plaintiffs' proofs, without more, are insufficient to infer malice on the part of the defendant.

Affirmed.

D. C. Riley, J., dissented. She would hold that, while weak, the facts were sufficient to raise a jury question as to malice. She would reverse.

### Opinion of the Court

1. Libel and Slander — Qualified Privilege — Actual Malice.

Statements made by a former employer about his former em-

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur 2d, Libel and Slander §§ 273-275.
[2] 50 Am Jur 2d, Libel and Slander §§ 174, 175.
   Sufficiency of plaintiff's allegations in defamation action as to defendant's malice. 76 ALR2d 696.
[3, 4] 50 Am Jur 2d, Libel and Slander § 462.

ployee to a prospective employer and at the prospective employer's request are protected by a qualified privilege, and, in order to be entitled to damages for defamation, the former employee must show that the statements were made with "actual malice".

2. Libel and Slander — Malice — Words and Phrases.

Malice, in a defamation case, is established by proof that the defamatory statement was made with knowledge that it was false or with reckless disregard of whether or not it was false.

3. Libel and Slander — Evidence — Malice.

Evidence of several incidents tending to indicate that the defendant did not particularly like the plaintiff, without more, is insufficient to raise the inference that defendant committed a libel of plaintiff "with knowledge that the statements were false or with reckless disregard for their truth", that is, that they were made with malice.

Dissent by D. C. Riley, J.

4. Libel and Slander — Evidence — Malice.

*Evidence of several incidents tending to indicate that the defendant did not like the plaintiff is sufficient to raise a jury question as to whether the defendant committed a libel of plaintiff "with knowledge that the statements were false or with reckless disregard for their truth", that is, whether they were made with malice.*

*Neal L. Grossman,* for plaintiffs.

*Simen & Zimmer, P.C.,* for defendant.

Before: Cynar, P.J., and D. E. Holbrook, Jr., and D. C. Riley, JJ.

Cynar, P.J. Plaintiffs appeal as of right from a directed verdict entered against them at the close of their proofs.

Plaintiffs filed this action in 1973 alleging several causes of action against various defendants. Various parties and claims were subsequently dropped and, after one appeal to this Court, *Wynn v Cole,* 68 Mich App 706; 243 NW2d 923 (1976),

the case was remanded for trial on plaintiffs' defamation claim against defendant. The substance of this claim was that Victoria Wynn's prospective employer, the Red Cross, had requested information concerning her abilities as a nurse from previous employers, including the Flint Department of Public Health (hereinafter FDPH). Plaintiffs alleged that defendant, in her capacity as director of the FDPH, had maliciously published to the Red Cross false and defamatory statements regarding plaintiff's previous employment with the FDPH (references to "plaintiff" hereinafter refer to plaintiff Victoria Wynn). The allegedly libelous publication consisted of a form sent out by the Red Cross requesting evaluation of various qualities and abilities of plaintiff. This form also indicated the information would be held in strict confidence. The form was completed and returned to the Red Cross under the names of S. Collins, Supervisor, and M. Cole, Director, FDPH. Although the form does not indicate who filled it out, other than being sent out under both names, the answers were formulated by either Shirley Collins or Verna Cole. The evaluation of ability as fair was made by Shirley Collins. Ability to work in a group was evaluated by Shirley Collins as fair. Intelligence and ability to grasp ideas was evaluated as fair by Shirley Collins. Personality was evaluated by Verna Cole as poor. Stability and dependability was evaluated as fair by Shirley Collins. Character, integrity and honesty was marked fair. Personal appearance was marked average. Under personal handicaps, Shirley Collins wrote "disgruntled about something most of the time". Attendance record is indicated as good. Under the item "would you hire this person into your organization", is "no", and Shirley Collins would not give this evaluation. The reason for

leaving was "resignation-sick" and may have been written by Shirley Collins. The additional words "Felt Vicki did not really apply herself to the best of her ability. Eager to get on the bandwagon if trouble existed" were the observations of Shirley Collins.

Plaintiff testified that after finishing her nurses training in June 1968, she was employed by the Flint Visiting Nurses Association (hereinafter FVNA) for about 19 months. Her immediate supervisor was Betty Anderson. Plaintiff first met the defendant when the defendant came to the FVNA on a social visit. Plaintiff had a feeling defendant did not like her because she did not speak to her at that time. At a point when she was with the FVNA for about a year, defendant came to work at the FVNA as a director of nursing. Sometime between the fall of 1969 and February 1970, after defendant would come in to speak to different employees but not to plaintiff, the plaintiff asked the defendant what she had done or if there was something she wasn't doing that was upsetting her. Defendant told her, "I just don't like you". The plaintiff also indicated the defendant contended plaintiff talked too much and wasted time coming back to the office when house calls were over. During a conference between plaintiff and defendant, the defendant gave to the plaintiff some literature to read to enable her to have a better insight about herself. A few days after receiving the literature, she was called into the defendant's office and, without given a reason, was presented with a choice either to quit or be fired. Plaintiff resigned from the FVNA on the promise she would have a better evaluation for another job.

In the spring, sometime in March or April 1970, plaintiff took a civil service test to work as a

junior public health nurse with the FDPH. The
director of nursing was Helen Bruening and her
immediate supervisor was Shirley Collins. Plain-
tiff's work was reviewed regularly, and, one time,
she was told she talked too much. After plaintiff
had worked for about six months, defendant was
hired as a director of the FDPH, replacing Mrs.
Bruening. Plaintiff had limited personal contact
with the defendant. During the 13-month period
while plaintiff worked at the FDPH, two specific
incidents took place. Once, after helping to locate
a lost chart, plaintiff took the chart to the defen-
dant, put her hand on her shoulder and asked her
if that is what she was looking for. Defendant
shook plaintiff's hand off her shoulder, said "Don't
ever touch me", turned around, went to her office
and slammed the door. On another day after she
was fired she took her written resignation in and
was stopped by the defendant, who asked, "What
did you do to Mrs. So-and so. We are getting phone
calls what you said to her and what she said to
you." "I said, well I didn't do anything to her."
After the defendant was there two to three
months, plaintiff went to her and asked if she
could be put to work where she could have easy
access to the bathroom until the time she was
going to have surgery performed or take personal
leave, since she did not have sufficient sick leave
accumulated. The reason given by defendant for
not granting leave was that the City of Flint was
having a financial crisis, and the job would not be
filled if she left. She was told to resign or be fired,
and she resigned. The plaintiff submitted a letter
of resignation but denied the choice of words were
hers. Although this was a civil service position, she
did not become aware of a grievance procedure
until three to four years after she left.

Plaintiff was working in a private nursing home in Flint when she applied for a position as a nurse with the Red Cross and had an interview about the first week of February, 1973. Plaintiff left the interview with a feeling she was hired subject to work recommendations being received from past employers. She submitted her resignation to the nursing home. One day before her last day at the nursing home, plaintiff received a call from the director of nursing at the Red Cross, stating she was not fit for work with the Red Cross because she received an unsatisfactory work rating from an undisclosed party.

Defendant testified she was the director of nursing at the FDPH when she received a reference form from the Flint Red Cross regarding the plaintiff. After a discussion, the form was filled out by Shirley Collins with her approval. The completed form contained the combined opinion of Shirley Collins and defendant, and Shirley Collins signed the completed form with her approval. Opinions of Verna Cole were based on what she learned herself and from various people, including Mrs. Collins.

Defendant was hired on December 1, 1970. Plaintiff called in sick on December 16, 1970, and did not return until early February when she said she had to have surgery and inquired about sick leave. She was told she could have sick leave. She was on sick leave until she wrote a letter of resignation sometime later in February.

According to Carol Krumbach, who was a director at the American National Red Cross at the time plaintiff sought employment as a nurse, it was standard procedure to send out reference forms to former employers. A response was received from the FDPH and it was a factor in the

decision not to employ the plaintiff. While not knowing how to describe it, the reference form played a part in not employing the plaintiff.

At the close of the evidence, defendant moved for a directed verdict on several grounds. The trial judge characterizing the motion as one "to dismiss for failure to carry the burden of proof", granted defendant's motion. In support thereof he stated:

"The record is woefully weak when showing malice. The burden is upon the plaintiff quite clearly to show malice, and the Court cannot find, other than the testimony of the plaintiff alone, nobody else but plaintiff alone, that the defendant had a malicious intent to do her harm."

On appeal, plaintiff correctly concedes that defendant's publication of the allegedly defamatory statements were clothed with a qualified privilege[1] which can only be overcome by a showing of "actual malice". See *Parks v Johnson,* 84 Mich App 162, 168-169; 269 NW2d 514 (1978), *Tumbarella v The Kroger Co,* 85 Mich App 482, 493-494; 271 NW2d 284 (1978). However, there is a split among the panels of this Court as to what is meant by "actual malice". Some cases define "malice" as some species of ill will or bad faith. *Wynn v Cole, supra,* 714, *Iacco v Bohannon,* 70 Mich App 463, 467; 245 NW2d 791 (1976). Others have adopted the definition set forth in *New York Times v Sullivan,* 376 US 254, 280; 84 S Ct 710; 11 L Ed 2d 686 (1964), and have concluded that malice is established by proof that the defamatory statement was made "with knowledge that it was

---

[1] There exists a qualified privilege to defame where "the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty." *Bacon v Michigan Central R Co,* 66 Mich 166, 170; 33 NW 181 (1887), *Wynn v Cole, supra,* 713.

false or with reckless disregard of whether it was false or not". *Tumbarella v The Kroger Co, supra,* 495, *Peisner v Detroit Free Press, Inc,* 82 Mich App 153, 164; 266 NW2d 693 (1978), *Brunn v Weiss,* 32 Mich App 428, 431; 188 NW2d 904 (1971). Although previous decisions of the Michigan Supreme Court have employed the former definition, *e.g. Powers v Vaughan,* 312 Mich 297, 306-307; 20 NW2d 196 (1945), in the most recent pronouncement from that Court on the subject it appears to have adopted the *New York Times* definition. See *Arber v Stahlin,* 382 Mich 300, 308; 170 NW2d 45 (1969). Therefore, notwithstanding dicta to the contrary in the initial appeal of this case, *Wynn v Cole, supra,* 714, we will apply the *New York Times* standard to the case at bar.

In determining whether the trial court erred in entering a directed verdict,[2] this Court views the evidence in a light most favorable to the nonmoving party. *Humenik v Sternberg,* 371 Mich 667, 669; 124 NW2d 778 (1963). If the evidence, when viewed in this manner, establishes a prima facie case, then a directed verdict is improper. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975).

We conclude that a directed verdict was properly entered in this case.[3] Plaintiff offered no evidence of defendant's state of mind at the time the allegedly defamatory statement was made. Although plaintiff did testify as to several incidents which tend to indicate that defendant did not particularly like her, this, without more, is insuffi-

---

[2] Under the circumstances of this case, there is no basis for treating plaintiff's motion as a motion to dismiss. See GCR 1963, 504. Therefore, for purposes of this appeal, we will consider the trial judge's order as granting plaintiff's motion for a directed verdict.

[3] We note, however, that in ruling on the motion, the trial judge improperly discredited plaintiff's testimony. The credibility of the witnesses is for the jury to decide. *Sacred Heart Aid Society v Aetna Casualty & Surety Co,* 355 Mich 480, 486; 94 NW2d 850 (1959).

cient to raise the inference that defendant committed the alleged libel with knowledge that the statements were false or with reckless disregard for their truth. In the absence of *any* evidence of malice, defendant's statements are protected by her qualified privilege and the case was properly taken from the jury's consideration.

Affirmed. Costs to defendant.

D. E. HOLBROOK, JR., J., concurred.

D. C. RILEY, J., *(dissenting).* Viewing the evidence in a light most favorable to the plaintiffs, I am unable to conclude that the evidence of malice is so wanting as to preclude plaintiffs' presentation of their cause to a jury.

Despite plaintiffs' ostensibly weak case, under either definition of malice, the facts presented here were sufficient to infer a malevolent state of mind on defendant's part at the time of the publication. Although the trial judge may have arrived at the correct ultimate result, it was not, in view of the facts proffered, and at this state of the proceeding, his decision to make. I would therefore reverse and remand for further proceedings.