CLERY v SHERWOOD

Docket No. 79561. Submitted July 9, 1985, at Grand Rapids. Decided
April 21, 1986.

Plaintiff, Sara Ellen Clery, personal representative of the estate
of Mark Francis Clery, deceased, brought a wrongful death
action in the Clinton Circuit Court against Timothy Sherwood,
the Stage Coach Stop Bar, and the Clinton County Road Com-
mission. Plaintiff thereafter amended the complaint to add Cass
Leonard and Jeffrey Pratt as defendants. A settlement was
reached with the bar for $128,000 and with the road commis-
sion for $5,000, and those parties were dismissed from the case.
The trial court, Randy L. Tahvonen, J., granted a directed
verdict in favor of Cass Leonard and a partial directed verdict
in favor of Jeffrey Pratt. The jury found Pratt and Sherwood to
be negligent and found plaintiff's damages to be $50,000, but
found that the decedent's negligence was the sole proximate
cause of his death. A judgment of no cause of action was then
entered in favor of the defendants. Plaintiff appeals by leave
granted from the judgments in favor of Pratt and Sherwood.
*Held:*

1. The trial court erred in instructing the jury that before
defendant Pratt was sued, in an amended complaint, the claims
against the bar and the road commission were dismissed.

2. The trial court erred in directing a verdict for Pratt on the
issues of whether he was involved in a chase of Clery and
whether his conduct was wilful and wanton.

Reversed and remanded.

ALLEN, J., dissented. He would find no error in regard to the
jury instructions concerning the dismissal of the suit against
the bar and the road commission. He also noted that, if the jury
would have found defendants' negligence to be the proximate
cause of Clery's death, the amount of the judgment, $50,000,
makes the error harmless since the trial court would have been

REFERENCES

Am Jur 2d, Trial §§ 463 *et seq.,* 573 *et seq.*

Am Jur 2d, Witnesses §§ 656 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Appeal
and Error; Instructions to Jury.

required to deduct the amount of the previous settlements from the total damages awarded by the jury. He would also hold that, even if the trial court erred by granting defendant Pratt's motion for a directed verdict, the error was harmless. He would affirm.

### OPINION OF THE COURT

1. RELEASE — JURY INSTRUCTIONS — SETTLEMENTS.

The Michigan Supreme Court, in *Brewer v Payless Stations, Inc,* 412 Mich 673 (1982), established the rule of law that a jury, in trials commencing after March 1, 1982, shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise, when there is no genuine dispute regarding either the existence of the release or the settlement between the plaintiff and a codefendant or the amount to be deducted from the jury verdict as a result of the settlement or release; this rule is violated where a court, over a plaintiff's objection, informs the jury that plaintiff's claim against codefendants has been dismissed when, in fact, the dismissal was based upon a settlement that could not have been revealed to the jury under *Brewer.*

2. APPEAL — DIRECTED VERDICTS.

The Court of Appeals, in reviewing a claim that a trial court erred in directing a verdict, must view the evidence in a light most favorable to the nonmoving party; a directed verdict is improper if the evidence, when viewed in this manner, establishes a prima facie case; if there are material issues of fact upon which reasonable minds might differ, they. are for the jury.

3. WITNESSES — CREDIBILITY.

Determination of the credibility of a witness is for the jury.

### DISSENT BY ALLEN, J.

4. APPEAL — JURY INSTRUCTIONS — PARTIES — DISMISSAL OF PARTIES.

*A trial court's error in informing the jury in a wrongful death action that two defendants had been dismissed from the action may be found to be nonprejudicial where the jury thereafter found two of the remaining defendants negligent but then further found that their negligence was not the proximate cause of the decedent's death and where the jury found the decedent to have been negligent, found that negligence to have been the proximate cause of the decedent's death and attrib-*

uted *100 percent of the negligence proximately causing the decedent's death to the decedent.*

5. APPEAL — TORTS — SETOFFS — HARMLESS ERROR — DISMISSAL OF PARTIES.

   *A trial court's error in informing the jury in a wrongful death action that two defendants had been dismissed from the action is harmless error where the amount of the judgment thereafter awarded the plaintiff is less than the amount that the plaintiff received as a result of the previous settlements with the defendants who were dismissed and, therefore, following the required deduction of the settlement amount from the judgment amount, the plaintiff would have received nothing even had the jury found that the remaining defendants' actions, rather than the decedent's, were the proximate cause of death.*

6. APPEAL — DIRECTED VERDICTS — HARMLESS ERROR.

   *The Court of Appeals may affirm a judgment based upon a directed verdict, despite the trial court's alleged error in granting the directed verdict, where the alleged error is harmless.*

*Mark T. Light,* for plaintiff.

*Dilley, Dewey & Waddell, P.C.* (by *Jonathan S. Damon),* for Jeffrey Pratt.

Before: WAHLS, P.J., and ALLEN and J. C. RAVITZ,* JJ.

J. C. RAVITZ, J. Plaintiff appeals by leave granted[1] from judgments of no cause of action in favor of defendants Timothy Sherwood and Jeffrey Pratt in plaintiff's wrongful death action.

The decedent, Mark Clery, left the Stage Coach Stop Bar near Lansing at closing time in the early morning hours of May 6, 1981. As Clery was driving his truck out of the driveway, he spotted a

---

* Recorder's court judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff filed a claim of appeal prior to the entry of judgment. He thereafter failed to file a claim of appeal within the applicable time period. Defendant brought a motion to dismiss and on November 28, 1984, this Court ordered that the appeal be accepted as on leave granted.

friend outside the bar and tried to make a left-hand turn back into the parking lot. A second vehicle, driven by defendant Timothy Sherwood and containing passengers Dale Sherwood and defendant Cass Leonard, struck the back of Clery's truck. Clery followed the Sherwood vehicle to a gas station approximately one-fourth mile down the road. The parties began yelling and arguing with each other, and they were joined by Jeffrey Pratt, who was driving past the gas station when he noticed his friend Dale Sherwood and decided to stop. Pratt caught wind of the subject of discussion and asked Clery if Clery was responsible for a dent in Pratt's truck which Pratt first noticed when he exited from the bar.

The discussion ended and Clery drove back toward the bar. A few minutes later, Clery drove his truck slowly past the gas station again. While sitting in their truck, Dale and Timothy Sherwood decided to follow Clery in order to get his insurance "and registration," and because he was "driving pretty crazily."

A few minutes later, Pratt drove his truck in the same direction. In the fateful minutes which followed, Clery's truck swerved to both sides of the road and onto the shoulder several times. According to Timothy Sherwood, the Sherwood vehicle caught up with Clery, passed him and signaled for him to stop. According to Sherwood, after he left his truck and began walking toward Clery's truck, Clery drove into a ditch, through a farmer's field and down the road. At that point, Dale Sherwood told Timothy not to follow Clery anymore. Leonard testified that Clery's truck disappeared from sight and that the Sherwood vehicle came across Clery lying on the road at a curve approximately two or three miles down the road. Leonard testified that the Sherwood vehicle swerved to avoid Clery and

that when he turned back he saw Pratt's truck run over Clery's body.

Pratt testified that after his vehicle left the gas station he caught up with the Sherwood vehicle and that he was rounding the fatal curve at approximately 30 or 40 m.p.h., a fraction of a second or more behind the Sherwood vehicle, when he saw the Sherwood truck's brake lights go on the the truck swerve or fishtail. Pratt testified that he braked and felt a bump as he was driving in the right lane. Pratt testified that he never saw the object which he hit and even today does not know whether he struck Clery's body.

A deputy sheriff testified that, from his measurements and observations, Clery's truck left the curve, went off the side of the road, into a ditch, struck a culvert, jumped over a driveway which was elevated over the drainage ditch and culvert, rolled over at least twice, and finally came to rest at a spot almost three hundred feet from where the vehicle originally left the road.

The personal representative for Clery's estate filed a complaint against Timothy Sherwood, the Stage Coach Stop Bar, and the Clinton County Road Commission in September of 1981. Plaintiff filed an amended complaint adding Cass Leonard and Jeffrey Pratt on November 29, 1982. A settlement was reached with the bar for $128,000 and with the road commission for $5,000, and those parties were dismissed from the case in October and November 1982. At trial, the court granted Pratt's motion for a directed verdict on the issue of whether he was involved in a chase of Clery and on the issue of whether his conduct was wilful and wanton. The court denied Pratt's motion for a directed verdict on plaintiff's claim that Pratt was negligent in striking Clery's body. The jury found Pratt and Sherwood negligent, but found that the

decedent's negligence was the sole proximate cause of his death.

At trial, the court took judicial notice of the pleadings in the case and instructed the jury that plaintiff's complaint was originally filed naming the bar and road commission as defendants and that those parties were dismissed in October and November of 1982. The court also informed the jury that plaintiff filed his amended complaint against Pratt in November of 1982. That instruction is the basis of plaintiff's first claim of error and our decision to reverse.

In 1982, as a matter of policy, the Michigan Supreme Court determined, prospectively, that:

> When there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, the jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise. Following the jury verdict, upon motion of the defendant, the court shall make the necessary calculation and find the amount by which the jury verdict will be reduced. [*Brewer v Payless Stations, Inc,* 412 Mich 673, 679; 316 NW2d 702 (1982).]

In *Brewer,* the Court's directive followed "persuasive legal and procedural arguments presented by both plaintiff and defendant . . . ." After summarizing these arguments, the Court stated that evidence of a settlement was a "two-edged sword" which "cuts both ways" and concluded that keeping such information from the jury would create less confusion, promote greater predictability and enhance the Court's policy of encouraging settlements. The Court was concerned with its own "uncertainty of juror reaction" to evidence of settlements. 412 Mich 678-679.

The issue before this Court is whether the *Brewer* rule is applicable to a situation where the trial court, over plaintiff's objection, instructed the jury that before defendant Pratt was sued, in an amended complaint, a prior lawsuit against the bar which served the intoxicated drivers (plaintiff's decedent and defendant Timothy Sherwood) and against the Clinton County Road Commission was dismissed.

The contested instruction was this:

> You must also accept it as a fact that the Plaintiff's complaint was originally filed on September 1, 1981, against Timothy Sherwood, the Stage Coach Bar and the Clinton County Road Commission; that the Plaintiff's case against the Road Commission was dismissed by the court on October 19, 1982; that the claim against the Bar was dismissed by the court on November 29, 1982, and that Plaintiff filed his amended complaint, which first made claim against Jeffrey Pratt, on November 29, 1982.

The trial judge gave this rationale for informing the jury of this "dismissal" and for distinguishing the policy directive stated in *Brewer:*

> There's a very clear difference between telling a fact finder about the amount of or nature of a settlement and telling the fact finder that another has been accused. That's what this is all about. Plaintiff is now saying that it's Mr. Sherwood's fault, that it's Mr. Pratt's fault, that it's Mr. Leonard's fault that this young man is dead; earlier, they said it was the Bar's fault; earlier, they said that it was, among others, the Road Commission's fault. Those earlier accusations, which here happen to take the form of a lawsuit, are clearly relevant and clearly admissible. It's just as if Mrs. Clery had said on the street corner to another neighbor, this is all the Bar's fault; if it wasn't for

them, we wouldn't be here. Clearly, that kind of statement would be admissible, because she made it; she is a party, and it tends to lay the fault on another. The fact she took and made a choice to make that accusation formal and filed a lawsuit doesn't prohibit its introduction. The fact of the prior action against the Road Commission, the fact of the prior action against the bar are facts that are admissible and that can be considered by the fact finder in making the decision, as to whether or not this is a good-faith claim or whether this is an after thought, whether the people are motivated by a real belief that these Defendants are responsible, or by greed.

We disagree with the statement of the trial judge in a number of respects.[2] Most importantly, we believe that the policy in *Brewer* must be applied in this case where the partial facts recited to the jury are of little, if any, probative value and where they are subject to considerable, though incalculable, prejudice. See MRE 403.

At least in *Brewer* the facts imparted to the jury were a complete and accurate recital of the settlement in that case. In the present case, disclosure was but that of a half-truth; the jury was told that the case against the bar and the road commission was dismissed, but they were not told that this was pursuant to settlement of $128,000 and $5,000 respectively.

In *Brewer,* the concern was misinterpretation of true facts; in the instant case, there is the added danger that the jury was in a position to misinterpret based only upon partial and misleading facts.

[2] Multiple tortfeasors can, of course, be jointly and severally or partially liable. Claims against multiple defendants do not show bad faith nor formulate a sound basis for the trial court's evidentiary ruling. Similarly, what Mrs. Clery, who was not a witness to the events, might have believed or even expressed on a street corner would not be admissible nor grounds for the evidentiary ruling in issue.

The adage that "a little information may be worse than none at all" is fitting.

The possibilities of prejudice here are numerous. Just by way of illustration, the jury might easily have concluded that, if plaintiff could not collect from the bar that served these extremely drunk and obviously out-of-control young men, or from the road commission responsible for "dead man's curve," then certainly they, the jury, should not hold the defendants before them liable for their roles in proximately causing this tragic accident. Moreover, the probative value of the information imparted to the jury is certainly doubtful. The strength of this wrongful death claim must be measured by the evidence and not by the date when an attorney elects, within legal bounds, to file a claim.

It could be argued that the erroneous instruction was harmless. The jury found that Sherwood's negligence was not a proximate cause of Clery's death. Additionally, the jury found plaintiff's damages to be $50,000, $83,000 less than the settlements with the road commission and the bar. See *Salim v LaGuire,* 138 Mich App 334; 361 NW2d 9 (1984), lv den 420 Mich 853 (1984). However, we believe that the potential prejudice of this instruction is so great that any guess at its impact on the jury's verdict is speculative at best. Because we must reverse and remand for a new trial, we address plaintiff's second claim of error.

Plaintiff claims that the trial court erred in directing a verdict for defendant Pratt on the issues of whether he was involved in a chase of Clery and whether his conduct was wilful and wanton. In determining this question, this court must view the evidence in a light most favorable to the nonmoving party. *Wynn v Cole,* 91 Mich App 517, 524; 284 NW2d 144 (1979). If the evi-

dence, when viewed in this manner, establishes a prima facie case, then a directed verdict is improper. *Id.* If there are material issues of fact upon which reasonable minds might differ, they are for the jury. *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389, 394-395; 362 NW2d 293 (1984).

Viewing the facts in a light most favorable to plaintiff, we believe that the trial court erred in directing a verdict on these issues. Pratt testified that when he left the bar on the night in question he noticed a dent in his truck and that when he drove back to the gas station and noticed his friend, Dale Sherwood, at the station he pulled in, determined that they were arguing about the accident involving Clery and the Sherwoods' truck and asked Clery if he had also hit his truck. Thus, Pratt involved himself in the antecedents to the chase. Thereafter, he was at times as close as four to five car lengths behind the Sherwoods. The fact that Pratt was not involved in the discussion when the Sherwoods determined that they would pursue Clery is not dispositive of Pratt's participation. Nor is Pratt benefited on this issue by the fact that he testified that the road where the pursuit occurred was his only route home. The credibility of witnesses is for the jury to decide. *Sacred Heart Aid Society v Aetna Casualty & Surety Co,* 355 Mich 480, 486; 94 NW2d 850 (1959). In short, we believe that reasonable minds could differ on the issue of whether Pratt participated in the chase. Participation could certainly amount to negligence and, in the circumstances of this case, we believe that it could amount to wilful and wanton conduct.

Cleary was driving erratically. The continued pursuit by the defendants, which could be seen as the reason for Clery's frantic flight, coupled with the motive and anger that the pursuers, including

Pratt, might well have had, gives rise to a question of fact concerning whether Pratt's conduct showed an intent to harm or such indifference to whether harm would result as to be the equivalent of a willingness that harm result. *Burnett v City of Adrian,* 414 Mich 448, 455; 326 NW2d 810 (1982).

Reversed and remanded for a new trial.[3]

WAHLS, P.J., concurred.

ALLEN, J., *(dissenting).* I respectfully dissent. In view of the jury's response to special questions propounded to them, I fail to see where the trial court's error in informing the jury concerning the suit against the bar and the Clinton County Road Commission was prejudicial. In answer to ten special questions, the jury found Timothy Sherwood and Jeffrey Pratt negligent but then further found that their negligence was not the proximate cause of Mark Clery's death. The jury found Mark Clery to have been negligent, found that negligence to have been the proximate cause of Clery's death and attributed one hundred percent of the negligence proximately causing Clery's death to him. Finally, the jury set plaintiff's damages at $50,000.

How then could the trial court's instructions have caused the jury to find that Timothy Sherwood or Jeffrey Pratt's negligence was the proximate cause of death. Had the jury not so specifically answered the special questions and had the transcript not so clearly supported the jury's finding that Clery caused his own death, I might agree that the court's error was grounds for a new trial. The testimony shows that Clery's blood alcohol content was .23 percent. The accident occurred

---

[3] The trial court granted a directed verdict on the issue of Cass Leonard's liability. Plaintiff makes no claim that the court erred in this regard. Thus, the judgment of no cause of action in favor of Cass Leonard is affirmed.

when Clery himself lost control of his truck and went off the road. Prior to leaving the road, Clery passed witness Robert Earl at a speed of from 70 to 80 miles per hour, driving at "an incredible rate of speed" and "accelerating all the way." Clery passed Earl by driving his truck on the right shoulder of the road, into the ditch and onto the grass by the side of the road. Earl further testified that he came across the accident approximately two minutes later and that he did not see anybody following or chasing Clery. Given these facts, it is unreasonable to perceive how the jury would have come to a different conclusion had the trial court refused to inform the jury regarding the dismissal of the tavern and road commission from the case.

Assuming, arguendo, that sans the trial court's reference to dismissal of the suit against the bar and road commission the jury would have found defendants' negligence the proximate cause of Clery's death, the amount of the judgment makes the error harmless. Under *Salim v LaGuire,* 138 Mich App 334; 361 NW2d 9 (1984), the trial court would have been required to deduct the amount of the previous settlements from the total damages awarded by the jury. The prior settlements totaled $133,000, and the amount awarded plaintifff by the jury was $50,000. Thus, plaintiff would have received nothing even had the jury found that the defendants' actions, rather than Clery's, were the proximate cause of death.

For similar reasons, I find no reason to reverse on the second issue raised on appeal, vis.: that the trial court erred by granting defendant Pratt's motion for a directed verdict. Even if error occurred, the error was harmless. As noted in considering the prior issue, the jury found that Pratt was negligent but also found that Pratt's negligence was not the proximate cause of Clery's

demise. Furthermore, the jury specifically found
that Timothy Sherwood did not engage in wilful
and wanton misconduct. Sherwood admitted chas-
ing Clery. If Sherwood's admitted chasing of Clery
was found not to be the proximate cause of Clery's
death, certainly Pratt's alleged joining in the
chase was not either. Additionally, I find the evi-
dence that Pratt seriously chased Clery flimsy at
best.

Accordingly, I would affirm the judgment of the
lower court.