BARNETT v HIDALGO

Docket No. 255318. Submitted July 12, 2005, at Detroit. Decided September 13, 2005, at 9:05 a.m. Leave to appeal sought.

Wapeka B. Barnett, as personal representative of the estate of James Otha Barnett, III, deceased, brought a wrongful death action in the Oakland Circuit Court against Cesar D. Hidalgo, M.D.; Renato Albaran, M.D.; Muskesh S. Shah, M.D.; the professional corporations of those doctors; Crittenton Hospital; and Crittenton Corporation, relating to the decedent's death from an undiagnosed and untreated blood disorder. Shah and his professional corporation settled with the plaintiff, and the plaintiff stipulated the dismissal of the Crittenton entities. The court, Colleen A. O'Brien, J., entered judgment on a jury verdict of no cause of action against the remaining defendants. The plaintiff appealed.

The Court of Appeals *held*:

Evidentiary rulings made by the trial court require a reversal and a remand for further proceedings.

1. Unredacted affidavits of merit listing Shah as a party after his settlement were erroneously admitted into evidence and shown to the jury. The admission allowed the jury to speculate about a possible settlement with Shah, who was no longer a party by the time of trial. A jury may not be informed of the existence or amount of a settlement unless there is a genuine dispute regarding the existence and amount of the settlement. Such knowledge could create prejudice and confusion on the part of the jurors.

2. The affidavit of merit signed by an expert witness implicating Shah was inadmissible hearsay and was not an admission by a party-opponent under MRE 801(d)(2). That affidavit may not be admitted in defense of the other doctors as substantive evidence that Dr. Shah was wholly at fault for the death. The trial court abused its discretion in admitting it.

3. Two other affidavits of merit were used improperly for impeachment purposes. From the additional record developed through discovery, the expert witnesses formed further opinions regarding the negligent care provided by the defendant doctors. Testimony on new facts is not testimony that may be impeached by

prior statements. The court erred in admitting the affidavits for the purposes of impeachment.

4. The affidavits of merit from the plaintiff's expert witnesses were not admissible as substantive evidence and were improperly placed before the jury as exhibits.

5. The trial court abused its discretion by allowing the defendants to offer Shah's deposition testimony into evidence. Although the deposition testimony was admissible for the purpose of impeaching a trial witness, it was improperly used as substantive evidence of an admission by Shah that was not admissible as substantive evidence.

6. Any error by the trial court in precluding the plaintiff's counsel at closing argument to argue bias on the part of a trial witness would not have affected the outcome of the trial given that the jury was free to make an inference of bias from the witness's testimony at cross-examination.

Reversed and remanded for further proceedings.

JURY — SETTLEMENT BY A DEFENDANT.

A jury may not be informed of the existence or amount of a pretrial settlement by one defendant in a case involving multiple defendants unless there is a genuine dispute regarding the existence and amount of the settlement; such knowledge could create prejudice and confusion on the part of the jurors, and encourage their speculation about the missing defendant and the terms of the settlement.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Charles R. Ash*), for Wapeka B. Barnett.

*Grier & Copeland, P.C.* (by *Rhonda Y. Reid Williams*), for Cesar D. Hidalgo, M.D.; and Cesar D. Hidalgo, M.D., P.C.

*O'Connor, DeGrazia, Tamm & O'Connor, P.C.* (by *Julie McCann O'Connor* and *James E. Tamm*), for Renato Albaran, M.D.; and Renato Albaran, M.D., P.C.

Before: COOPER, P.J., and FORT HOOD and R.S. GRIBBS*, JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

COOPER, P.J. Plaintiff[1] appeals as of right from a judgment of no cause of action entered in favor of defendants Cesar D. Hidalgo, M.D.; Renato Albaran, M.D.; and their professional corporations, following a jury trial in this wrongful death action based upon medical malpractice. As the trial court committed a myriad of evidentiary errors affecting the outcome of this case, we reverse and remand for further proceedings consistent with this opinion.

### I. FACTS AND PROCEDURAL HISTORY

On September 16, 1998, plaintiff's decedent, James Otha Barnett, III, was admitted to Crittenton Hospital for emergency gallbladder surgery. Dr. Albaran, a general surgeon, performed the surgery. After surgery, Mr. Barnett's blood platelet count was very low, leading the doctor to be concerned about internal bleeding. Dr. Muskesh S. Shah, a hematologist, determined that Mr. Barnett's platelet count was low because the surgery had exacerbated a preexisting blood disorder known as idiopathic thrombocytopenic purpura (ITP).[2] Mr. Barnett's platelet count increased slightly, although it remained significantly below normal when he was released on September 20. However, Mr. Barnett was readmitted two days later after complaining that he could not think clearly. He was examined by Dr. Hidalgo, a neurologist, who initially suspected that Mr. Barnett had suffered a

---

[1] For ease of reference, we will refer to Wapeka B. Barnett, in her capacity as personal representative acting on behalf of the plaintiff estate, as the individual plaintiff.

[2] Dr. Rachel Borson, plaintiff's expert in the fields of hematology and internal medicine, testified that ITP involves a confused spleen chewing up platelets with no apparent cause. Mr. Barnett underwent surgery to remove his spleen when he was in high school. He also had accessory spleen tissues that take on the function of a spleen removed at a later date.

stroke. Dr. Hidalgo asked Dr. Shah to perform a disseminated intravascular coagulation (DIC) screen[3] to rule out thrombotic thrombocytopenic purpura (TTP)—a fatal but treatable blood condition in which clots build up in the small vessels of the body, potentially cutting off blood to the brain. These tests were performed, but Mr. Barnett's medical records indicate that the results were never reviewed.[4] Dr. Hidalgo subsequently transferred Mr. Barnett to another facility for a magnetic resonance imaging (MRI) examination on September 24, 1998. Mr. Barnett's condition was unstable at the time of the transfer. He went into cardiac and respiratory arrest and died that day. Mr. Barnett's postsurgical difficulties were actually related to the undiagnosed and untreated blood disorder TTP.

Before trial, plaintiff stipulated to the dismissal of Crittenton Hospital and Crittenton Corporation. Plaintiff also settled with Dr. Shah and his professional corporation and stipulated to their dismissal. Dr. Albaran and Dr. Hidalgo sought to file notices of nonparty fault pursuant to MCR 2.112(K), as they alleged that Dr. Shah was wholly at fault for Mr. Barnett's death. The trial court found that the parties were jointly and severally liable and, therefore, denied the doctors' motions.[5] At the close of trial, the jury, by special verdict, found that neither Dr. Albaran nor Dr. Hidalgo was liable.

## II. AFFIDAVITS OF MERIT

Plaintiff first argues that the trial court erred by admitting into evidence three affidavits of merit filed

---

[3] Dr. Borson testified that DIC is a blood disorder in which an active clotting system uses platelets faster than they can be made.

[4] Although not recorded in Mr. Barnett's medical records, Dr. Shah testified in his deposition that he did review Mr. Barnett's test results.

[5] The trial court originally granted Dr. Albaran's motion, but subsequently set aside that order.

with the complaint pursuant to MCL 600.2912d.[6] These affidavits had not been redacted. They listed Dr. Shah as a party to the suit. The affidavit of Dr. Rachel Borson also specifically noted Dr. Shah's negligence as a cause of Mr. Barnett's death. The affidavits of merit were marked as exhibits and shown to the jury. Plaintiff contends that these affidavits were inadmissible hearsay and that they impermissibly reference a "missing" settling party. We agree. Generally a trial court's decision to admit evidence will be reversed only for an abuse of discretion.[7] However, when the trial court's decision involves a preliminary question of law, we review the issue de novo.[8] A trial court abuses its discretion by

---

[6] MCL 600.2912d provides, in pertinent part:

(1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice . . . .

[7] *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

[8] *Id.*

permitting evidence to go to a jury that is inadmissible as a matter of law.[9]

The unredacted affidavits listed Dr. Shah as a party. The admission of the affidavits allowed the jury to speculate about a possible settlement with Dr. Shah, who became a nonparty long before trial. It is well established that a jury may not be informed of the existence or amount of a settlement unless there is a genuine dispute regarding the existence and amount.[10] In *Brewer v Payless Stations, Inc*, the Michigan Supreme Court held that such evidence is both prejudicial and confusing. The admission of such evidence can be prejudicial to either party.[11] Furthermore, "the uncertainty of juror reaction to the fact of an indemnity release is considered as a foreseeable deterrent to settlements between plaintiffs and codefendants."[12]

In *Clery v Sherwood*,[13] this Court found the danger of prejudice and confusion to be even greater with the admission of misleading evidence referencing the "missing" settling party. In *Clery*, the trial court instructed the jury that certain parties had been dismissed before trial, without informing them that the parties were dismissed after a settlement had been reached. "[B]ased only upon partial and misleading facts," the jury was left to speculate regarding the missing party's whereabouts, the amount of a possible settlement, and the potential fault of the missing party.[14] This Court found

[9] *Id.*

[10] *Brewer v Payless Stations, Inc*, 412 Mich 673, 678-679; 316 NW2d 702 (1982).

[11] *Id.* at 678.

[12] *Id.* at 679.

[13] *Clery v Sherwood*, 151 Mich App 55; 390 NW2d 682 (1986).

[14] *Id.* at 62. This Court found that, under these circumstances, "[t]he adage that 'a little information may be worse than none at all' [was] fitting." *Id.* at 63.

that the "potential prejudice" was so great that the error required reversal.[15]

The reference to Dr. Shah in the affidavits of merit was misleading. The affidavits clearly included Dr. Shah as a party in their captions, yet the jury was instructed that Dr. Shah was not a party to this action. The jury was allowed to speculate about Dr. Shah's absence from the trial.[16] This was particularly onerous in light of the various other improper references to Dr. Shah throughout the trial. The admission of these affidavits, on this basis alone, constitutes reversible error.[17]

Additionally, Dr. Borson's affidavit of merit implicating Dr. Shah was inadmissible hearsay. Dr. Borson was originally retained by plaintiff, as a hematologist, to prepare an affidavit of merit pertaining to those claims against Dr. Shah. Following Dr. Shah's dismissal, Dr. Borson provided expert testimony at trial regarding the cause of Mr. Barnett's death. On cross-examination, Dr. Albaran's counsel questioned Dr. Borson at length regarding the potential negligence of Dr. Shah and of Mr. Barnett's primary care physician. Defendants offered Dr. Borson's affidavit of merit as substantive evidence of Dr. Shah's negligence.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

---

[15] *Id.* at 63 ("However, we believe that the potential prejudice of this instruction is so great that any guess at its impact on the jury's verdict is speculative at best.").

[16] In fact, this was the exact result sought by defendants in this "empty chair defense," as Dr. Albaran's counsel referred to his defense in arguing against plaintiff's motion in limine to exclude this evidence.

[17] MCR 2.613(A); MRE 103(a).

matter asserted."[18] Admissions made by a party-opponent are excluded from the definition of hearsay.[19] MRE 801(d)(2) provides that a statement is not hearsay if

> [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, . . . or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .[20]

Defendants sought the admission of Dr. Borson's affidavit of merit pursuant to MRE 801(d)(2), to be used as substantive evidence that Dr. Shah was wholly at fault for Mr. Barnett's death. However, the affidavit of merit was not an admission of any kind. Dr. Borson's affidavit contained only a qualified opinion based on the limited information available at the time the complaint was filed. Dr. Borson's affidavit implicated a nonparty. It was not an admission by plaintiff that Dr. Albaran and Dr. Hidalgo were free of fault. Dr. Borson did not form an opinion regarding the potential fault of Dr. Albaran and Dr. Hidalgo in preparing the affidavit of merit; plaintiff retained experts in the fields of general surgery and neurology to render opinions regarding the potential negligence of the defendant doctors.

Dr. Borson's affidavit of merit was prepared against Dr. Shah alone. When questioned, Dr. Borson agreed that the statements in her affidavit were true. However,

---

[18] MRE 801(c).

[19] MRE 801(d)(2).

[20] *Id.*

as we have already noted, Dr. Borson did not address the additional and critical alleged negligence of Dr. Albaran and Dr. Hidalgo in preparing her affidavit. The statements in the affidavit presented only a partial history of the negligence contributing to Mr. Barnett's death and, therefore, were used out of context in this trial. The affidavit was an incomplete statement in which plaintiff did not manifest an adoption. Accordingly, Dr. Borson's affidavit of merit was irrelevant, inadmissible hearsay, and the trial court abused its discretion in admitting the affidavit as substantive evidence of Dr. Shah's liability.[21]

Two other affidavits of merit were also improperly used for impeachment purposes. MRE 801(d)(1) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," and the statement was given under oath *and* is inconsistent with the declarant's testimony.[22] Defendants contend that the testimony of plaintiff's general surgery expert, Dr. Stephen Graham, and neurology expert, Dr. Eric Wasserman, was inconsistent with their affidavits of merit as the witnesses "discovered" additional grounds to support a finding of negligence.

---

[21] We also note that an expert witness is not an agent authorized to speak on behalf of the retaining party. MRE 801(d)(2)(C) and (D). See 2 McCormick, Evidence (5th ed), ch 25, § 259, p 152 ("The party offering evidence of the alleged agent's admission must first prove that the declarant is an agent of the adverse party and the scope of that agency."). "[F]undamental to the existence of an agency relationship is the right to control the conduct of the agent with respect to the matters entrusted to [him or her]." *St Clair Intermediate School Dist v Intermediate Ed Ass'n/MEA*, 458 Mich 540, 557-558; 581 NW2d 707 (1998). See also *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). It would be impossible for an expert witness to testify impartially while acting as an agent under the control of the retaining party.

[22] MRE 801(d)(1)(A) (emphasis added).

The affidavits of Dr. Graham and Dr. Wasserman were used for impeachment purposes only.[23] However, the witnesses' testimony regarding errors "discovered" since the preparation of their affidavits of merit were not inconsistent statements. The witnesses formed further opinions regarding the negligent care provided by the defendant doctors based on the record developed throughout discovery. The witnesses explained that these facts were unknown to them at the time they prepared their affidavits of merit.[24] Accordingly, the witnesses presented no testimony that could be impeached by their prior statements.

Dr. Borson's affidavit of merit also could not be used to impeach her testimony. Dr. Borson testified on direct examination regarding the various errors committed in Mr. Barnett's treatment that contributed to his death. During cross-examination, Dr. Borson testified that the statements made in her affidavit of merit implicating Dr. Shah were true. However, throughout cross- and

---

[23] Defendants also moved for directed verdict at the close of plaintiff's case-in-chief, arguing that the expert witnesses' testimony regarding additional grounds to support a finding of negligence amounted to "trial by surprise." The trial court disagreed and denied defendants' motion.

[24] "Federal courts have long held that, for purposes of FRE 801(d)(1)(A), 'inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position.' " *People v Chavies*, 234 Mich App 274, 282; 593 NW2d 655 (1999), citing *United States v Russell*, 712 F2d 1256, 1258 (CA 8, 1983), *United States v Distler*, 671 F2d 954, 958 (CA 6, 1981), and *United States v Dennis*, 625 F2d 782, 795 (CA 8, 1980). Furthermore, it is well-established law that a witness's prior statement that omits details included in his or her trial testimony is only inconsistent if it would have been "natural" to include those details. *People v Hackett*, 460 Mich 202, 213-216; 596 NW2d 107 (1999); *People v Collier*, 426 Mich 23, 34-36; 393 NW2d 346 (1986). See also 1 McCormick, *supra*, ch 5, § 34, pp 127-128. Without the power to foretell the future, it would have been quite unnatural for Dr. Graham and Dr. Wasserman to include the additional grounds in their affidavits of merit.

redirect examination, Dr. Borson emphasized that the negligence of the other doctors also contributed to Mr. Barnett's death. Dr. Borson never relieved Dr. Shah of his responsibility. Accordingly, Dr. Borson did not present any inconsistent testimony that could be impeached by the affidavit.

Even assuming, arguendo, that plaintiff's expert witnesses presented testimony that could possibly be impeached by their affidavits of merit, and they did not, we would find that the trial court improperly allowed the affidavits to go before the jury. It is hornbook law that evidence used solely for impeachment purposes may not be given to the jury as an exhibit.[25] As the affidavits of merit were inadmissible for substantive purposes, it was improper to seek their admission as exhibits to place before the jury.

The affidavits of merit of plaintiff's expert witnesses were not admissible for any purpose. They impermissibly reference a "missing" party, allowing the jury to speculate about a possible settlement. The affidavits were inadmissible hearsay that could not be used as substantive evidence. They were also irrelevant by the time of the trial. Furthermore, none of the witnesses presented any testimony that could be impeached by the affidavits. Accordingly, we find that the admission of these affidavits was reversible error affecting the outcome of the trial.

---

[25] *People v Wytcherly*, 172 Mich App 213, 220; 431 NW2d 463 (1988), citing *People v Rodgers*, 388 Mich 513, 519; 201 NW2d 621 (1972), and *People v Alexander*, 112 Mich App 74, 77; 314 NW2d 801 (1981). See also 2 McCormick, *supra*, ch 24, § 249, pp 103-104 (as impeaching a witness with a prior inconsistent statement challenges the witness's accuracy and truthfulness when making both statements, the prior statement is inadmissible as substantive evidence to establish the truth of the matter asserted).

III. DR. SHAH'S DEPOSITION

The trial court also abused its discretion by allowing defendants to offer Dr. Shah's deposition testimony into evidence. Dr. Albaran's counsel challenged Dr. Graham's direct examination testimony indicating that there was no review of the results of the DIC screen performed on Mr. Barnett by a doctor.[26] Counsel validly used Dr. Shah's deposition to impeach that testimony. However, counsel did not limit his use of the deposition to impeachment purposes. He questioned Dr. Graham regarding Dr. Shah's deposition testimony on two additional occasions. He twice repeated the deposition testimony, which would otherwise be inadmissible,[27] as if it established the matter asserted.[28] Counsel emphatically argued in closing before the jury that Dr. Shah reviewed the test results.[29] This critical information could not

[26] On cross-examination, Dr. Graham stated that Dr. Shah did not see the DIC screen. Dr. Albaran's counsel challenged this testimony by referring to Dr. Shah's deposition testimony. Dr. Graham asked to see "the documentation in the record" referred to by counsel. After reviewing the deposition testimony, Dr. Graham stated, "I am not going to impeach that testimony. But what I will impeach is that Dr. Shah did not document in the record that he was aware of this at all, at all."

[27] Defendants concede that Dr. Shah's deposition would be inadmissible for substantive purposes. MRE 804(b)(5).

[28] While still questioning Dr. Graham, Dr. Albaran's counsel stated, "Except that he—he's testified that he saw it, we now know that." He gratuitously referenced Dr. Shah's deposition testimony in questioning defendants' general surgery expert witness, Dr. Wallace Arneson—"Is it not your understanding, based on the review of the testimony that's been given under oath from witnesses, including Dr. Shah, that that DIC screen was reviewed?" However, Dr. Arneson never indicated that the test was unreviewed and, therefore, counsel had no grounds for impeachment.

[29] See *People v Jenkins*, 450 Mich 249, 262-263; 537 NW2d 828 (1995); *United States v Hogan*, 763 F2d 697, 703 (CA 5, 1985) (finding reversible error where the prosecution used the witnesses' hearsay statements, which could only be properly used for impeachment, as substantive

have gone before the jury by any other means. As noted previously, it is a basic tenet of trial practice, and not unknown to experienced trial counsel, that evidence used solely for impeachment purposes is inadmissible as substantive proof of the matter asserted.

It is also well established that counsel may not impeach a witness merely to place before the jury otherwise inadmissible hearsay as substantive evidence.[30] In this case, Dr. Albaran's counsel's repeated use of limited impeachment evidence as a substantive admission by Dr. Shah was "a mere subterfuge to get before the jury evidence not otherwise admissible."[31] There was "an unacceptable risk that the jury would accept [Dr. Shah's deposition testimony] as substantive evidence."[32] Accordingly, the admission of this evidence also amounts to reversible error.

### IV. LIMITATION ON CLOSING ARGUMENT

Finally, plaintiff contends that the trial court improperly precluded her counsel, during closing argument, from asserting bias on the part of Dr. Arneson. On cross-examination, Dr. Arneson testified that his medical practice was represented by the same law firm to which Dr. Albaran's counsel belonged. The trial court

---

evidence in closing argument). In this case, Dr. Albaran's counsel argued that "This test was looked at by Dr. Shah . . ." and "we know that it was seen by Dr. Shah. You heard Dr. Graham testify that in his deposition Dr. Shah saw it [sic]."

[30] *Jenkins, supra* at 260-263; *Hogan, supra* at 703. See also *United States v Peterman*, 841 F2d 1474, 1479 n 3 (CA 10, 1988) (noting that "[e]very circuit has said evidence that is inadmissible for substantive purposes may not be purposely introduced under the pretense of impeachment," and citing numerous cases standing for that proposition).

[31] *Jenkins, supra* at 262, quoting *United States v Morlang*, 531 F2d 183, 190 (CA 4, 1975).

[32] *Id.* at 260; *Hogan, supra* at 703.

precluded plaintiff from arguing Dr. Arneson's bias in closing argument, finding that this was a "backdoor" method of suggesting that Dr. Arneson was a defendant in a medical malpractice action. " '[A] trial [court] has wide discretion and power in matters of trial conduct,' "[33] including limiting closing argument.[34] However, although plaintiff was denied the opportunity to directly argue bias, the jury was free to make this inference based upon the testimony elicited during cross-examination. Therefore, any potential error in limiting closing argument would not have affected the outcome of the trial.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[33] *Lansing v Hartsuff*, 213 Mich App 338, 349; 539 NW2d 781 (1995), quoting *People v Collier*, 168 Mich App 687, 698; 425 NW2d 118 (1988).

[34] *Heintz v Akbar*, 161 Mich App 533, 539; 411 NW2d 736 (1987).