*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW MIGDALEWICZ,

        Plaintiff-Appellant,

v

PERRY D. HOLLIE,

        Defendant-Appellee,

and

FORD MOTOR COMPANY and THE AMERICAN ROAD INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
January 28, 2020

No. 343981
Oakland Circuit Court
LC No. 2017-157163-NI

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

In this third-party negligence case under the no-fault act, MCL 500.3101 *et seq.*, plaintiff Matthew Migdalewicz appeals by right the trial court's order of judgment entering judgment against plaintiff and in favor of defendant Perry D. Hollie based on the jury's verdict that defendant's negligence was not a proximate cause of plaintiff's injuries. We affirm.

## I. BACKGROUND

This lawsuit stems from a vehicular accident that occurred when defendant, who was driving an SUV, made a left-hand turn in front of plaintiff's bicycle. Plaintiff was traveling around 25 miles per hour, was not wearing a helmet, and was looking down at the speedometer when the collision occurred. Plaintiff never saw defendant's vehicle despite having around 150 feet of unobstructed view before impact. Defendant did not dispute factual causation, but did dispute proximate cause. The matter proceeded to a jury trial on the issue of whether defendant was a proximate cause of plaintiff's injuries and the issue of damages.

-1-

At trial, plaintiff's theory of the case was that defendant was not looking where he was going when he made the left-hand turn and that, when he did so he cut the corner, veered into plaintiff's lane, and, traveling between five and eight miles per hour, cut right in front of plaintiff. As a result, plaintiff collided with the front of defendant's vehicle and sustained serious injuries, including a fractured femur, a cervical fracture, a skull fracture and traumatic brain injury, a facial laceration, and memory loss.

Plaintiff presented the testimony of a medical expert, Dr. Ronald Horowitz, who testified that use of a helmet would not have prevented plaintiff's injuries. Dr. Horowitz explained that when plaintiff did a "face plant" on the vehicle's windshield, the force of impact caused injuries to plaintiff's face, the fracture to plaintiff's cervical spine, and the traumatic brain injury and, further, that a helmet would not have prevented the broken leg. Dr. Horowitz also indicated that a bike helmet would not have prevented plaintiff's parietal skull fracture[1] because the fracture was located in an area not protected by a bike helmet.

Plaintiff's accident reconstructionist, Daniel Lee, Ph.D., testified that in his expert opinion, based on the angles of the marks left on defendant's vehicle and the distance the bike propelled backward upon impact, defendant's car was moving between four and eight miles per hour at the point of impact. Dr. Lee further indicated that plaintiff, having 150 feet between when he turned onto Wicklow Road and when he reached the intersection of Wicklow Road and Wicklow Court, would have been traveling around 29 feet per second and would have had approximately five seconds to stop before impacting defendant's car. According to Dr. Lee, average reaction time is 1.5 seconds and plaintiff would not have had sufficient time to react to defendant's sudden turn in front of him.

Comparatively, defendant's theory was that he had stopped his car before making the turn and that plaintiff, who was looking at his speedometer, slammed into defendant's stopped vehicle. According to defendant, plaintiff was comparatively negligent in causing the accident and his injuries because he was looking down at his speedometer, was not wearing a helmet, and had ingested marijuana the night before the accident. Defendant testified that on the day of the accident, he was returning home to his residence on Wicklow Court and was traveling about 10 miles per hour on Wicklow Road. Defendant testified that as he approached Wicklow Court he did not see any oncoming traffic on Wicklow Road; he then put on his turn signal and rolled to a stop for two to three seconds, with the front end of his car across center line, to look for children in the cul-de-sac. According to defendant, he was still looking left into the cul-de-sac when his car was suddenly struck by plaintiff.

Defendant also offered the testimony of Jennifer Yaek, Ph.D., who was qualified to testify as an expert in accident reconstruction, biomechanics, and injury causation. Her testimony was that plaintiff got his concussion and head injury when he came off the vehicle and hit his head on the ground, not when his head impacted the glass. Dr. Yaek indicated that use of

_____

[1] The parietal bone of the skull is behind the frontal bone, and is essentially the back and upper sides of the head.

a helmet would have reduced the risk of the parietal skull fracture and concussion when plaintiff landed on the ground. She disagreed with Dr. Lee's opinion that the vehicle was moving at impact, concluding that the physical evidence did not support that conclusion and, instead, that the bicycle basically "bounced" back upon impacting the vehicle. She further testified that plaintiff would have had a clear view of the intersection from approximately 150 feet back, giving him four to five seconds to see defendant's vehicle and avoid the collision.

At the close of the proofs, plaintiff moved for a directed verdict, arguing that defendant had admitted he was a proximate cause of plaintiff's injury. The trial court denied the motion on the basis that conflicting evidence existed on the issue of proximate cause. Ultimately, the jury returned a verdict finding that defendant's negligence was not the proximate cause of plaintiff's injuries. Plaintiff moved for judgment notwithstanding the verdict (JNOV) or a new trial, but the trial court denied the motion and, subsequently, entered an order of judgment for defendant. Plaintiff appeals.

## II. MOTIONS FOR DIRECTED VERDICT, JNOV, AND NEW TRIAL

Plaintiff first argues that the denial of his motion for directed verdict and motion for JNOV and/or new trial was improper because defendant admitted that he was a cause of the accident. We disagree.

Michigan's no-fault act generally abolished tort liability in motor vehicle accident cases. *Kreiner v Fischer*, 471 Mich 109, 115; 683 NW2d 611 (2004). However, under MCL 500.3135, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Known as a "third-party" claim under the no-fault act, this section permits recovery of noneconomic losses, i.e., damages for pain and suffering, against a third-party only if certain injury thresholds are met. Defendant has admitted that plaintiff suffered a permanent serious disfigurement and, thus, defendant is subject to plaintiff's negligence claim for noneconomic losses.

To establish a common-law negligence claim, a plaintiff must prove: "(1) [t]he existence of a legal duty by defendant toward plaintiff; [(2)] the breach of such duty; [(3)] the . . . causal relation between the breach of such duty and an injury to the plaintiff[, i.e., causation]; and[; (4)] the plaintiff must have suffered damages." *Lorencz v Ford Motor Co*, 439 Mich 370, 375; 483 NW2d 844 (1992) (quotations omitted). Here, defendant has admitted that he owed a duty to plaintiff, that he breached that duty, and that his negligence was a cause in fact of plaintiff's injuries. Defendant, however, disputed that his negligence was a proximate cause of plaintiff's injuries and the jury agreed, returning a defense verdict finding that plaintiff's injuries were not a proximate cause of defendant's negligence.

The causation element of a negligence claim requires a plaintiff to prove both "cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id*. at 86-87. A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).

"On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Craig*, 471 Mich at 86-87. "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997) (quotations and citation omitted). In other words, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Stoll v Laubengayer*, 174 Mich 701, 705; 140 NW 532 (1913). Notably, there can be more than one proximate cause. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). When a number of factors contribute to produce an injury, one actor's negligence can still be a proximate cause if it was a substantial factor in bringing about the injury. *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988).

## A. MOTION FOR DIRECTED VERDICT

Plaintiff first argues that the denial of his motion for directed verdict was improper because the trial court applied a "the" proximate cause standard and ample record evidence supported that plaintiff's injuries were the result of the accident that defendant admitted he caused. A trial court's decision on a motion for directed verdict is reviewed de novo. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). "In doing so, [this Court] review[s] the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Id*. (quotations and footnote omitted). "A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Aroma Wines & Equip, Inc v Columbian Distribution Servs*, 303 Mich App 441, 446; 844 NW2d 727 (2013) (quotations and citation omitted). In asserting that the trial court's denial of the directed verdict was erroneous, plaintiff ignores the standard that the trial court was bound to apply and makes no attempt to explain why factual issues on the issue of proximate cause did not exist, so as to justify granting the motion in plaintiff's favor.

Notwithstanding plaintiff's failure, our review of the record shows that the trial court's denial of the motion for directed verdict was proper because factual issues existed on the issue of proximate cause. Plaintiff, for example, presented evidence that defendant was traveling around 40 miles per hour down Wicklow Road, slowing to five or eight miles per hour at the time of the turn, and was moving when the collision occurred. A reasonable inference from this testimony is that defendant effectively ran into plaintiff because he was not looking for oncoming traffic. Defendant on the other hand, presented testimony that he was stopped at the time of the accident, that he had looked for oncoming traffic but did not see any, and that plaintiff had been looking down and did not see defendant. An opposite inference can be drawn from this evidence—that plaintiff was not looking where he was going and ran into defendant. Additionally, the parties presented conflicting expert testimonies as to the cause of plaintiff's injuries, with plaintiff's expert indicating that a helmet would not have prevented the injuries, while defendant's expert offered opposing testimony.

Having reviewed the trial record, questions of fact plainly existed as to proximate cause that precluded a directed verdict. We, therefore, conclude that the trial court did not err by

finding that "there [had] been differing testimony" making proximate cause "simply a question for the jury to decide." The trial court properly denied the motion.

## B. MOTION FOR JNOV/NEW TRIAL

Plaintiff makes the same argument with regard to the trial court's denial of his motion for JNOV and/or new trial, asserting that the trial court applied the wrong proximate cause standard and that defendant's own witnesses admitted defendant was a cause of the accident. "This Court reviews de novo the trial court's ruling on a motion for JNOV." *Farm Credit Servs v Weldon*, 232 Mich App 662, 672; 591 NW2d 438 (1998). "In determining the propriety of the trial court's decision, [this Court must] review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Prime Financial Servs LLC v Vinton*, 279 Mich App 245, 255; 761 NW2d 694 (2008). "[I]f reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 605-606; 886 NW2d 135 (2016) (quotations and citation omitted).

"A trial court's decision to grant or deny a motion for a new trial under MCR 2.611 is reviewed for an abuse of discretion." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 761; 685 NW2d 391 (2004). A trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). A new trial may be granted, on some or all issues, when a party's substantial rights are affected by a "verdict or decision [that is] against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(e). When a motion is premised on a verdict being against the great weight of the evidence, the trial court's function is to determine whether the verdict was against the overwhelming weight of the evidence. *Scott v Illinois Tool Works*, 217 Mich App 35, 41; 550 NW2d 809 (1996). This inquiry requires review of the whole body of proofs. See *Dawe v Dr Reuvan Bar-Levav & Assoc, PC* (*On Remand*), 289 Mich App 380, 401; 808 NW2d 240 (2010). The jury's verdict should not be set aside if there is competent evidence to support it; the trial court cannot substitute its judgment for that of the factfinder unless the record reveals a miscarriage of justice. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 194; 600 NW2d 129 (1999).

With regard to the motion for JNOV, viewing the evidence most favorably to the verdict shows that defendant was traveling around 10 miles per hour down Wicklow Road. As he approached the intersection of Wicklow Road and Wicklow Court, defendant saw no oncoming traffic, including plaintiff; but, as defendant neared Wicklow Court his gaze shifted to the cul-de-sac, where defendant continued to look as he started his left-hand turn and then stopped over the centerline of Wicklow Road for approximately two to three seconds, still looking into the cul-de-sac. During the seconds that defendant focused on the cul-de-sac, plaintiff, traveling at 25 miles per hour from a distance of 150 feet away, had an unobstructed view of the Wicklow Road-Wicklow Court intersection, but was looking at his speedometer when he slammed into defendant's car.

The proximate cause inquiry requires the Court to consider, viewing the evidence most favorably to the verdict, whether defendant should have reasonably foreseen that, by stopping with the front end of his car in the lane of oncoming traffic, a person could be injured, including a person who was not looking and did not see defendant's car. Certainly, given that defendant

did not see any oncoming traffic, a person stopping their vehicle over the center line for two or three seconds would reasonably anticipate based on ordinary human experience that there was no oncoming traffic and that any traffic that did appear would see and avoid him—in this way, a juror could honestly conclude that it was not reasonably foreseeable that stopping over the center line would cause injury to another. On the other hand, the facts favorable to the verdict also support a finding of proximate cause. It is also reasonably foreseeable in the instance that a driver stops over the center line for two to three seconds after not initially seeing any oncoming traffic, a collision causing injury could occur because, ordinary human experience would make one reasonably anticipate that oncoming traffic may be similarly distracted. In other words, if one places their vehicle within the lane of oncoming traffic and stops there, the negligence of other vehicular traffic in avoiding a collision, and consequent injury as a result, is foreseeable. Ultimately, because the jurors could have "honestly reached different conclusions [as to proximate cause under these facts], the jury verdict must stand." *Hecht*, 499 Mich at 605-606. We thus conclude that the trial court's denial of the plaintiff's motion for JNOV was proper.

Likewise, the trial court did not abuse its discretion by denying plaintiff's motion for a new trial. Again, on balance after a review of the entire record, we note that the parties presented conflicting accounts of the accident, but defendant presented sufficient competent evidence to support the jury's finding of no proximate cause. See *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 518; 679 NW2d 106 (2004) (a motion for a new trial based on great weight of the evidence grounds should only be granted if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand"). That the jury could have reached a verdict in favor of plaintiff on the evidence presented does not render the evidence insufficient; rather, the jurors simply chose to believe the testimony and evidence in favor of defendant. It was not for the trial court to re-weigh the evidence in considering plaintiff's motion and, given that competent evidence on the whole record existed to support the defense verdict, the trial court did not err by finding that the verdict was not against the overwhelming weight of the evidence. See *Ellsworth*, 236 Mich App at 194 (indicating that the trial court may not substitute its judgment for the jury in considering a motion for new trial based on great weight of the evidence grounds).

Plaintiff, as noted, argues that the trial court erred by denying his motion for JNOV and/or new trial (and motion for directed verdict) because it applied an incorrect proximate cause standard. Under Michigan common-law negligence principles, plaintiff explains, there can be more than one proximate cause and the court allegedly used a standard requiring a single, or most immediate and direct, proximate cause. In making this argument, plaintiff points out that the court sometimes used the term "the" to describe proximate cause in ruling on his motions and that the term "the" signifies that the court applied a single definite proximate cause standard.

Plaintiff is correct that the court sometimes used the term "the," but the court's substantive analysis belies plaintiff's assertion that the court applied the incorrect proximate cause standard in considering plaintiff's motions. In its written opinion and order denying the motion for JNOV and/or a new trial, for example, the court recognized that more than one proximate cause of plaintiff's injuries could exist, including plaintiff's own actions. Indeed, absent from the court's analysis is an evaluation of the evidence to support a single, most immediate cause of plaintiff's injuries or any statement of law defining proximate cause as the one most direct to the injury. Moreover, the trial court properly instructed the jury on the law

that more than one proximate cause may exist. In sum, aside from the court's syntactical misstatement, plaintiff has not demonstrated how the court misapplied the law in denying the motions for directed verdict and JNOV and/or new trial. Accordingly, we reject his claim of legal error.

Next, plaintiff argues that the evidence, viewed most favorably to the verdict, supports a finding that defendant's negligence was a proximate cause of plaintiff's injuries. In making this argument, plaintiff ignores that all inferences must be drawn in favor of the verdict. As we have explained, viewing the evidence in favor of defendant, a jury could draw a reasonable inference to conclude that defendant was a proximate cause of plaintiff's injuries and it could also draw a reasonable inference to conclude that defendant's negligence was not a proximate cause of plaintiff's injuries. We must draw those inferences in defendant's favor and just because the evidence also supports a finding of proximate cause does not mean the verdict should be overturned. To agree with plaintiff would be to effectively usurp the jury's role of assessing the credibility of witnesses and weighing the evidence.

In additional support of this argument, plaintiff quotes from multiple witnesses' testimonies, including those of defendant and Dr. Yaek, indicating that defendant's negligence was a cause of the accident, and asserts that those testimonies are direct evidence that defendant admitted he was a proximate cause of plaintiff's injuries. Plaintiff misconstrues this testimony, as it was not probative on the issue of proximate cause; rather, it was relevant to cause in fact, a component of causation to which defendant admitted. Similarly, plaintiff points to the testimonies of medical experts that the accident caused plaintiff's injuries; plaintiff again misses, however, that the proximate cause analysis focuses on whether it was reasonably foreseeable that the defendant's negligent conduct would cause plaintiff's injuries. The medical testimonies merely indicate that the accident caused the injuries and nothing more.

Relatedly, plaintiff's attempt to distinguish *Cole v Austin*, 321 Mich 548; 33 NW2d 78 (1948), on which defendant relies, suffers from this same blurring of cause in fact and proximate cause. In *Cole*, the Supreme Court held that questions of fact existed on the issue of proximate cause where the defendant driver was traveling at 25 miles per hour when he struck two kids on a bike who were not looking where they were going. *Id*. at 550-551, 557. Because questions of fact existed, the Court reversed the trial court's grant of a directed verdict for the plaintiffs, ruling that the issue was properly left to the jury. *Id*. at 577. Plaintiff says that *Cole* is distinguishable because defendant here admitted that his negligence caused the accident. This distinction and other factual differences are immaterial. Defendant did not admit that his negligence was a proximate cause of plaintiff's injuries and, just as in *Cole*, questions of fact existed as to proximate cause given the conflicting testimonies on the issue. The trial court did not err by denying plaintiff's motions for directed verdict, JNOV, and/or new trial.

## III. EVIDENTIARY DECISIONS

Plaintiff next makes four claims of evidentiary error on appeal, arguing that the trial court erred by (1) admitting his marijuana test, (2) precluding Officer David Kemp from offering expert opinion, (3) allowing defendant to impeach Dr. Horowitz using a journal article in contravention of MRE 707, and (4) permitting defendant to use demonstrative evidence not consistent with the circumstances of the accident. While plaintiff claims that these evidentiary

decisions were error or an abuse of discretion, at no point does plaintiff argue that these alleged errors were outcome-determinative so as to warrant reversal. See *Ykimoff v W A Foote Mem Hosp*, 285 Mich App 80, 103; 776 NW2d 114 (2009) ("Error in the admission of evidence is not cause for reversal unless it affects a substantial right of the party opposing admission." (citation and quotations omitted)). Absent any argument in this regard, or explanation of how these alleged errors affected the jury's verdict to the detriment of plaintiff's substantial rights, plaintiff has abandoned these claims. See *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) ("[W]here a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court."). Given plaintiff's failure to argue that reversal is required on the basis of any of these errors, we do not consider the substance of his claims.

## IV. CLOSING ARGUMENT

Plaintiff also argues that the trial court erred by precluding his argument during closing statements that Michigan's seat belt statute was analogous to the facts of this case and that plaintiff's fault should be apportioned in accord with the statute. This Court "review[s] for an abuse of discretion the trial court's decisions concerning '[w]hat constitutes a fair and proper' closing argument." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 693; 777 NW2d 511 (2009) (citation omitted). "A trial court does not abuse its discretion when its decision falls within the range of principled outcomes." *Rock v Crocker*, 499 Mich 247, 255; 884 NW2d 227 (2016).

During plaintiff's cross-examination of Dr. Yaek, plaintiff asked that the court take judicial notice of Michigan's seat belt statute, MCL 257.710e(8) . Defendant did not object and the court stated, "Okay, there's a seat belt statute." That provision provides:

Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, that negligence shall not reduce the recovery for damages by more than 5%. [MCL 257.710e(8).]

Later, during closing argument, plaintiff attempted to argue that because the seat belt law limits a plaintiff's comparative negligence to five percent, the failure to wear a bike helmet should be treated similarly. Defendant objected and the trial court precluded the argument.

"[A] trial [court] has wide discretion and power in matters of trial conduct, including limiting closing argument." *Barnett v Hidalgo*, 268 Mich App 157, 170; 706 NW2d 869 (2005) (quotations omitted). "The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury." *People v Stokes*, 312 Mich App 181, 206; 877 NW2d 752 (2015), vacated in part on other grounds, 501 Mich 918 (2017). "[A]n attorney may argue the facts and all reasonable inferences arising from the evidence admitted at trial." *Id*.

We see no abuse of discretion in the trial court's decision precluding plaintiff's argument related to the seat belt law. Such an argument would not only carry the potential for confusion, given that the statute is inapplicable to the present matter, but would also improperly inject information regarding plaintiff's level of fault based on a statute that is inapplicable. Plaintiff

-8-

asserts that the argument should have been permitted because the court took judicial notice of the statute, citing a 1970's Supreme Court case for the proposition that once a court takes judicial notice of a statute it may be considered by the jury. That case, however, makes no such pronouncement. See *Winekoff v Pospisil*, 384 Mich 260, 266; 181 NW2d 897 (1970) ("The right to take judicial notice of some thing, or occurrence, or record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially noticeable matter is *admissible* in evidence." (emphasis added)). Taking judicial notice of a statute does not mean it has been entered into evidence and, indeed, plaintiff never moved to admit the statute into evidence until closing argument. Under these circumstances, the court's decision limiting plaintiff's closing argument was within the range of principled outcomes. In any case, even if the court did err, the error was harmless because the jury never reached the question of damages. Reversal on this basis is not warranted.

## V. JURY INSTRUCTIONS

Finally, plaintiff raises two claims of instructional error, asserting that the trial court erred by (1) providing the jury with M Civ JI 12.01, which allowed the jury to infer that plaintiff was negligent based on the marijuana test, and (2) giving the jury a special instruction that was not supported by the evidence. Claims of instructional error are reviewed de novo. *Cox v Bd of Hosp Managers*, 467 Mich 1, 8; 651 NW2d 356 (2002). "However, the trial court's determination that a jury instruction is accurate and applicable to the case is reviewed for an abuse of discretion." *Hill v Hoig*, 258 Mich App 538, 540; 672 NW2d 531 (2003). "Instructional error warrants reversal if the error resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be inconsistent with substantial justice." *Cox*, 467 Mich at 8 (citation and quotations omitted).

### A. M CIV JI 12.01

At the close of all the proofs, the court instructed the jury on the applicable law. Included in the instructions, over plaintiff's objection, was M Civ JI 12.01, Violation of Statute. As given to the jury, that instruction provided:

> We have a statute which provides that a person whether licensed or not shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles including an area designated for the parking of vehicles within this state if the person has in his or her body any amount of a substance listed as schedule one which includes marijuana.

> If you find that these circumstances existed in this case, you may infer that the plaintiff was negligent. You must then decide whether such negligence was a proximate cause of the occurrence.

Plaintiff objected on the ground that no evidence of the amount of marijuana in plaintiff's system had been presented and also that no evidence supported that plaintiff's marijuana use had any impact on the accident. In overruling plaintiff's objection, the court noted that the underlying statute allows an inference of negligence to be drawn if the person has *any* amount of marijuana in their system.

On appeal, plaintiff argues that the instruction was wrongly given because there was no evidence showing that marijuana was a contributing cause of the accident. In support, plaintiff cites the testimony of witnesses indicating that marijuana did not have an impact on the accident, mainly because plaintiff did not appear intoxicated. Plaintiff misses, however, that giving the instruction does not require evidence supporting a conclusion that the presence of marijuana in a person's system contributed to the accident. Simply put, the instruction is applicable if a person operates a motor vehicle with any amount of marijuana in their system, regardless of the amount or other temporal considerations. Given that some evidence supported the instruction, it was not error for the court to give it. See *Cox*, 467 Mich at 8 ("Jury instructions should include "all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories *if the evidence supports them*." (emphasis added)).

## B. SPECIAL INSTRUCTION

Plaintiff next argues that the trial court erred by providing the jury with defendant's special instruction because the instruction was not supported by the evidence and is inconsistent with Michigan law. "When the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001).

At the instruction conference, defense counsel objected to M Civ JI 10.9, which allows a jury to infer that a plaintiff is not negligent if the plaintiff has a loss of memory caused by the accident. Counsel requested that, in conjunction with M Civ JI 10.09, the court give the following special instruction:

> [I]f you find that plaintiff had a clear and unobstructed view of the intersection prior to impact, any presumption of ordinary care is overcome and you may presume that plaintiff saw the car approaching and by the exercise of ordinary care and caution couldn't avoid the accident.[2]

Plaintiff objected to this special instruction on the grounds that the standard instruction, M Civ JI 10.09, would suffice. The court disagreed, reasoning that the standard instruction did not encompass a situation where the presumption of due care could be rebutted.

First, contrary to plaintiff's contention, the instruction was plainly supported by the evidence in this case. Testimony was introduced that plaintiff had 150 feet of unobstructed view to see defendant's vehicle and around five seconds to avoid the accident. Plaintiff's second argument—that the instruction is contrary to Michigan law—is really a repackaged argument that the facts did not support the instruction. Mainly, plaintiff asserts that the instruction was

---

[2] We note that this instruction, as it appears in the trial transcript, would seem to benefit plaintiff, not defendant. But the instruction as requested by defendant, and from which plaintiff argues, read "could have avoided the accident" rather than "couldn't avoid the accident." We presume that this is a transcription error and that the instruction as read was "could have."

based on *Heckler* v *Laing*, 300 Mich 139, 145-146; 1 NW2d 484 (1942), and because the facts of *Heckler* are distinguishable, the instruction should not have been given.

In *Heckler*, 300 Mich at 149, the Michigan Supreme Court concluded that the decedent driver was guilty of contributory negligence and that a directed verdict should have been granted for the defendant driver. There, both drivers approached an intersection with an unobstructed view of oncoming traffic. *Id*. at 142-144. The decedent driver, however, did not stop at a stop sign and the defendant driver, who also did not see the decedent, collided with the decedent. *Id*. In setting aside the judgment, the Court noted that decedent driver was presumed to have acted with ordinary care, but that presumption was rebutted where the evidence showed that the decedent had a "clear and unobstructed view" of the oncoming traffic; in this instance, the decedent was presumed to have seen the oncoming traffic and "by the exercise of due care and caution . . . [to] have avoided the accident." *Id*. at 145-146.

The fact that plaintiff had the right-of-way, as plaintiff argues, does not make the principle espoused in *Heckler* inapplicable. And, while plaintiff's preferred interpretation of the evidence may not support the special instruction, evidence presented at trial did support its provision. We, therefore, conclude that the trial court did not err by providing the special instruction to the jury.

Affirmed.

/s/ Michael J. Riordan
/s/ David H. Sawyer

-11-